45 N.J. 138 (1965)
211 A.2d 789
THE DELAWARE RIVER AND BAY AUTHORITY, PLAINTIFF-RESPONDENT,
v.
THE INTERNATIONAL ORGANIZATION OF MASTERS, MATES & PILOTS, DEFENDANT-APPELLANT, AND AFFILIATED EMPLOYEES, ETC., DEFENDANTS.
The Supreme Court of New Jersey.
Argued May 17, 1965.
Decided June 28, 1965.
*140 Mr. John J. Bracken argued the cause for the defendant-appellant (Messrs. Bracken & Walsh, attorneys).
Mr. Thomas K.J. Tuso argued the cause for the plaintiff-respondent (Mr. Joseph Tuso, attorney).
The opinion of the court was delivered by JACOBS, J.
The defendant, The International Organization of Masters, Mates & Pilots (hereinafter called the Union), appealed from an order denying its motion to dissolve a temporary restraint entered in the Chancery Division. We certified before argument in the Appellate Division.
The plaintiff, The Delaware River and Bay Authority (hereinafter called the Authority), is a bi-state agency of New Jersey and Delaware, created by a compact entered into between them and approved by Congress. See N.J.S.A. 32:11E-1 et seq. It was established to construct and operate crossings between New Jersey and Delaware over the Delaware River and Bay, it operates the Delaware Memorial Bridge, has undertaken the construction of a second bridge, and operates a ferry service running between Cape May, New Jersey, and Lewes, Delaware. Article IV of the compact declares that the Authority "shall constitute an agency of government of the State of Delaware and the State of New Jersey" for listed general public purposes and that it "shall be deemed to be exercising essential government functions in effectuating such purposes." Article VII enumerates various powers and concludes with power "[t]o exercise all other powers not inconsistent with the Constitutions of the 2 States or of the United States, which may be reasonably necessary or incidental to the effectuation of its authorized purposes" and to exercise in connection with its property and affairs "all powers which might be exercised by a natural person or a private corporation in connection with similar property and affairs." Article XIII declares that the powers and functions exercised by the Authority are for the benefit and general welfare of the people of Delaware and New Jersey and to that *141 end the Authority "shall be regarded as performing essential governmental functions" and shall not be required to pay any taxes levied by the States or their political subdivisions. The New Jersey statute providing for the compact (L. 1961, c. 66) directs that the Authority's New Jersey commissioners shall be appointed by the Governor with the advice and consent of the Senate and that they shall be deemed State officers. N.J.S.A. 32:11E-2; N.J.S.A. 32:11E-4.
After the Authority began its operation of the ferry service between Cape May, New Jersey, and Lewes, Delaware, the Union, representing deck officers employed by the Authority, made demands for wage increases and union recognition. It placed pickets near the ferry terminals, Union members failed to report for work on the ferries, and the ferry service was halted. The Authority submitted a verified complaint to the Chancery Division seeking injunctive relief against the Union and its affiliated employees. The complaint alleged that the Union had threatened to "strike and refuse to operate the ferry boats and other facilities operated by the plaintiff," that the Authority's operation of the ferries was in the public interest and for the public convenience, necessity, health and welfare, that a strike would cause irreparable injury to the public and the Authority, and that the defendant employees, as employees of an agency of the States of New Jersey and Delaware, are not authorized to engage in a strike which "would be contrary to public policy, against the public interest and in defiance of the Laws of the State of New Jersey and the United States of America." The Chancery Division entered an ex parte order dated August 28, 1964, restraining the defendants from engaging, inter alia, "in any type of strike, sit down, work stoppage or slow down against the plaintiff" and directing that they show cause on September 11th why the restraint should not be continued until final hearing. The order granted leave to the parties to move to dissolve, enlarge or modify the restraint upon two days' notice.
*142 When served with the August 28th order the Union removed the pickets from the New Jersey ferry terminal but, acting on the advice of counsel, continued the pickets at the Delaware terminal. On September 1st the Authority obtained an order to show cause why the Union should not be held in contempt. On September 4th the Union moved for dissolution of the August 28th restraint as violative of due process and the terms of New Jersey's Anti-Injunction Act. See N.J.S. 2A:15-51 et seq. On September 11th the Union's motion for dissolution of the restraint was denied. The Union then filed its notice of appeal from the denial of the motion to dissolve the temporary restraint. Thereafter it removed its pickets at the Delaware terminal and the Chancery Division dissolved the temporary restraint, apparently because all of the picketing had ceased. The hearing on the contempt matter was continued by the Chancery Division pending disposition of the Union's appeal.
The August 28th order providing for a temporary restraint was interlocutory in nature, as was the September 11th order denying the motion to dissolve the restraint. See Romano v. Maglio, 41 N.J. Super. 561, 569 (App. Div.), certif. denied 22 N.J. 574 (1956), cert. denied 353 U.S. 923, 77 S.Ct. 682, 1 L.Ed.2d 720 (1957). The Union had no right to appeal from the September 11th order without leave which it could have sought, but did not, under R.R. 2:2-3. However the issue has not been raised by the parties and in view of the public importance of the meritorious questions presented we shall pass it by along with any suggestion of mootness. See Cooke v. Tramburg, 43 N.J. 514, 516 (1964); State v. Perricone, 37 N.J. 463, 469, cert. denied 371 U.S. 890, 83 S.Ct. 189, 9 L.Ed.2d 124 (1962); Schlossberg v. Jersey City Sewerage Authority, 15 N.J. 360, 364 (1954).
Strikes by public employees are prohibited in our State and generally elsewhere. See N.J. Turnpike Auth. v. Amer., etc., Employees, 83 N.J. Super. 389, 395 (Ch. Div. 1964); Donevero v. Jersey City Incinerator Auth'y, 75 N.J. Super. *143 217, 222 (Law Div. 1962), rev'd on other grounds McAleer v. Jersey City Incinerator Auth'y, 79 N.J. Super. 142, 146 (App. Div. 1963); see also Norwalk Teachers' Ass'n v. Board of Education, 138 Conn. 269, 83 A.2d 482 (Sup. Ct. Err. 1951); City of Los Angeles v. Los Angeles Bldg. & C. Tr. Council, 94 Cal. App.2d 36, 210 P.2d 305 (D.C. App. 1949), reaffirmed 109 Cal. App.2d 81, 240 P.2d 16 (D.C. App. 1952); City of Manchester v. Manchester Teachers Guild, 100 N.H. 507, 131 A.2d 59 (Sup. Ct. 1957); City of Alcoa v. International Broth. of Elec. Wkrs., 203 Tenn. 12, 308 S.W.2d 476 (Sup. Ct. 1957); City of Pawtucket v. Pawtucket Teachers' Alliance, 87 R.I. 364, 141 A.2d 624 (Sup. Ct. 1958); Port of Seattle v. International Longshore. & W.U., 52 Wash.2d 317, 324 P.2d 1099 (Sup. Ct. 1958); Cornell, "Collective Bargaining by Public Employee Groups," 107 U. Pa. L. Rev. 43, 54 (1958); Note, "Labor Relations in the Public Service," 75 Harv. L. Rev. 391, 407 (1961); Note, "Union Activity in Public Employment," 55 Colum. L. Rev. 343, 358 (1955); Annot., "Union organization and activities of public employees," 31 A.L.R.2d 1142 (1953).
In Donevero supra, 75 N.J. Super. 217, the Law Division held that the Jersey City Incinerator Authority was a public body exercising governmental functions and that its employees were public employees who had no right to strike; in the course of its opinion it stressed the vitality of the prevailing view that, in order to protect the public health, safety and welfare, government must remain immune from any strikes by its employees. On appeal, the Appellate Division expressed its complete agreement on this issue, saying:
"Defendant Authority was established by the City of Jersey City to administer a necessary governmental operation, the collection and disposal of garbage and other refuse. A strike against defendant Authority was a strike against the municipal government itself and was illegal. Public employees have no right to strike. See Annotation, `Union Organizations and Activities of Public Employees,' 31 A.L.R.2d 1142 (1953). The uninterrupted carrying out of governmental functions is vital to the public health and welfare. Strikes *144 against government cannot be tolerated. Norwalk Teachers' Association v. Board of Education, 138 Conn. 269, 83 A.2d 482, 31 A.L.R.2d 1133 (Sup. Ct. Err. 1951)." 79 N.J. Super., at p. 146
In the Turnpike Authority case, supra, 83 N.J. Super. 389, the defendant union, acting on behalf of members employed as toll collectors and maintenance employees of the New Jersey Turnpike Authority, demanded recognition and threatened to conduct a strike. The Authority obtained an ex parte injunction and sought a declaration as to its responsibilities and the right of its employees to strike. The Chancery Division held that although the Turnpike Authority was not obliged to engage in collective bargaining, it was under an affirmative duty to meet with its employees, or their chosen representatives, and to consider in good faith any grievances and proposals submitted on the employees' behalf. It also held that the employees had no right to strike, pointing out that the Legislature had established the Turnpike Authority within the State Highway Department as "an instrumentality exercising public and essential governmental functions" (N.J.S.A. 27:23-3), that its employees were "persons in public employment" within the contemplation of Article 1, par. 19 of the New Jersey Constitution, and that such employees were prohibited from engaging in any strikes against the governmental Authority. 83 N.J. Super., at pp. 395-396.
The delegates to the 1947 Constitutional Convention included many who were thoroughly familiar with the differentiation in the field of labor relations, between governmental or public employees on the one hand, and nongovernmental or private employees on the other hand. They included members of the Governor's Committee on State-Employee Relations which, in 1942, had submitted a report recognizing the right of public employees to organize and be heard through representatives of their own choosing on questions of wages, hours, and working conditions generally, but pointing out that public employees do not have, in any full sense, the collective bargaining rights available to private employees and may not engage in the coercive activities available to the latter. The *145 Committee expressed its complete agreement with President Franklin D. Roosevelt's well known comment that "a strike of public employees manifests nothing less than an intent on their part to prevent or obstruct the operations of government until their demands are satisfied" and that "such action, looking toward the paralysis of government by those who have sworn to support it, is unthinkable and intolerable." See also Donevero v. Jersey City Incinerator Auth'y, supra, 75 N.J. Super., at p. 223.
Article 1, par. 19 of the Constitution clearly recognizes the distinction between public and private employees. Thus it provides broadly that "[p]ersons in private employment shall have the right to organize and bargain collectively," and more narrowly, that "[p]ersons in public employment shall have the right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their own choosing." See 1 Proceedings, Constitutional Convention of 1947, pp. 660-663; cf. City of Springfield v. Clouse, 356 Mo. 1239, 206 S.W.2d 539 (Sup. Ct. 1947). See also Johnson v. Christ Hospital, 84 N.J. Super. 541, 546 (Ch. Div. 1964), aff'd 45 N.J. 108 (1965). When the South Jersey Port Commission (R.S. 12:11-1 et seq.) inquired of the Attorney General as to the rights of its employees under Article 1, par. 19, he replied, in a memorandum opinion dated October 20, 1954, (1) that the Commission's employees have the right to form a union, (2) that they have no right to collective bargaining in its full sense but do have a right to meet, through representatives of their own choosing with representatives of the Commission who are obligated to hear proposals and grievances and determine, in good faith, whether they are meritorious, feasible and satisfactory to the Commission, (3) that they have no right to strike, and (4) that the Labor Management Relations Act is inapplicable since it contains an express exclusion in favor of states and their political subdivisions. See 29 U.S.C.A. § 152(2); N.J. Turnpike Auth. v. Amer., etc., Employees, supra, 83 N.J. Super., at p. 397.
*146 The Union urges that the immunity against strikes, while it may properly be applied to policemen, firemen and others whose cessation of operation would jeopardize the public welfare in obvious fashion, should not be applied to the Authority's ferry operation which it calls proprietary rather than governmental. The distinction between proprietary and governmental operations is found in the tort field where it has been judicially invoked in an effort to reduce the injustices resulting from the sovereign's traditional immunity from responsibility for injuries caused by its negligence. It is an ill-defined concept of doubtful strength (Cloyes v. Delaware Tp., 23 N.J. 324, 327 (1957); Housing Authority of Union City v. Commonwealth Trust Co., 25 N.J. 330, 340 (1957)) and has wisely been rejected in the cases dealing with the prohibitory policy against strikes by public employees. See Port of Seattle v. International Longshore. & W.U., supra, 324 P.2d at p. 1101; City of Los Angeles v. Los Angeles Bldg. & C. Tr. Council, supra, 210 P.2d, at p. 311; Annot., supra, 31 A.L.R.2d, at p. 1149. The Authority here is an agency of the State and its activities clearly involve a proper exercise of governmental functions. While there may be many other agencies which more directly affect the public health, safety and welfare, the Authority is nonetheless engaged in what is now widely taken to be an essential public operation. Its employees are hardly to be distinguished from public transit and similar employees who have been repeatedly denied the right to strike. See City of Detroit v. Division 26 of Amalgamated Ass'n, 332 Mich. 237, 51 N.W.2d 228 (Sup. Ct.), appeal dismissed 344 U.S. 805, 73 S.Ct. 37, 97 L.Ed. 627 (1952); City of Cleveland v. Division 268 of Amal. Ass'n, 90 N.E.2d 711 (Ohio Com. Pl. 1949); New York City Transit Authority v. Loos, 2 Misc.2d 733, 154 N.Y.S.2d 209 (Sup. Ct. 1956), aff'd 3 A.D.2d 740, 161 N.Y.S.2d 564 (1957); cf. Port of Seattle v. International Longshore. & W.U., supra, 324 P.2d 1099; International Longshore, Ass'n v. Georgia Ports Auth., 217 Ga. 712, 124 S.E.2d 733 (Sup. Ct.), cert. denied 370 U.S. 922, 82 S.Ct. 1561, 8 L.Ed.2d 503 (1962); *147 City of Alcoa v. International Broth. of Elec. Wkrs., supra, 308 S.W.2d 476; see also Note, supra, 75 Harv. L. Rev., at p. 410.
The Union contends that under the terms of the compact the Authority had "no right or power to commence this suit as an agent or subdivision of the states." We find no merit in this contention. Although the compact contains no express power to sue and be sued, such a power would normally be implied (cf. 9 Fletcher, Cyclopedia Corporations § 4226 (1964 Revision)) and, in any event, would be found in Article VII which provides for such powers as may be reasonably necessary or incidental to the effectuation of the Authority's authorized purposes. The provision in Article VII empowering it to exercise all powers which might be exercised by a natural person is properly viewed as an additional grant and does not in anywise alter the clear legislative and congressional intent, as expressed in Article IV, that the Authority operate as "an agency of government" of the States of New Jersey and Delaware "exercising essential government functions." The fact that the Authority is designated as a bi-state agency, rather than an agency of New Jersey alone, has no materiality at least where, as here, there is no indication that the historic and widely prevailing policy against strikes by public employees is not equally applicable in both states. See N.J.S. 2A:82-27; Shepherd v. Ward, 5 N.J. 92, 106 (1950).
The Union cites Article VII, paragraph (f) of the compact in support of its contention that the Authority is subject to collective bargaining. Paragraph (f) authorizes the Authority "[t]o enter into contracts and agreements with either State or with the United States, or with any public body, department, or other agency of either State or of the United States or with any individual, firm or corporation, deemed necessary or advisable for the exercise of its purposes and powers." This admittedly vests broad power in the Authority to enter into contracts but clearly has no relation to any obligation on the part of the Authority to enter into *148 collective bargaining in its full sense or to any right of its employees to strike. While we are not prepared to accept and do not pass on the Authority's contention that a legislative grant to certain classes of public employees, of full collective bargaining rights including the right to strike, would be violative of Article 1, par. 19, we are entirely satisfied that such a grant, being a sharp departure from prior law and policy, must be deliberately expressed and is not to be implied. See City of Manchester v. Manchester Teachers Guild, supra, 131 A.2d, at p. 62; cf. Los Angeles Met. Tr. Auth. v. Brotherhood of R. Train, 54 Cal.2d 684, 8 Cal. Rptr. 1, 355 P.2d 905 (Sup. Ct. 1960); 47 Va. L. Rev. 338 (1961); 59 Mich. L. Rev. 1260 (1961).
The Union contends that the August 28th order was void since it was issued without compliance with the provisions of the Anti-Injunction Act (N.J.S. 2A:15-51 et seq.). That act was patterned largely on the Norris-LaGuardia Act (29 U.S.C.A. § 101 et seq.) which provided that no federal court shall have jurisdiction to issue any restraint in a case involving or growing out of a labor dispute except to the extent and in the manner therein provided. See Ind. Dairy Workers, etc. v. Milk Drivers, etc., Local No. 680, 30 N.J. 173, 184 (1959). In United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), the Supreme Court held that the Norris-LaGuardia Act had no application to a proceeding by the United States to restrain a threatened strike by men held to be government employees. Chief Justice Vinson pointed out that the act made no reference to the United States and that there were "no evident affirmative grounds for believing that Congress intended to withhold an otherwise available remedy from the Government as well as from a specified class of private persons" (330 U.S., at p. 270, 67 S.Ct., at p. 684, 91 L.Ed., at p. 900); he placed supporting reliance on the "old and well-known rule that statutes which in general terms divest pre-existing rights or privileges will not be applied to the sovereign without express words to that effect." 330 U.S., at p. *149 272, 67 S.Ct., at p. 686, 91 L.Ed., at p. 902; see Strobel Steel, etc., Co. v. State Highway Comm., 120 N.J.L. 298, 302 (E. & A. 1938); N.J. Inter. Bridge & Tun. Comm. v. Jersey City, 93 N.J. Eq. 550, 553 (Ch. 1922); cf. Estelle v. Bd. of Ed., Red Bank, 26 N.J. Super. 9, 16 (App. Div. 1953), modified 14 N.J. 256 (1954).
State cases construing their anti-injunction acts have generally followed the same course in holding them inapplicable to proceedings by states to enjoin threatened strikes by employees of the states or their political subdivisions. See N.J. Turnpike Auth. v. Amer., etc., Employees, supra, 83 N.J. Super., at p. 398; City of Pawtucket v. Pawtucket Teachers' Alliance, supra, 141 A.2d, at p. 626; cf. Petrucci v. Hogan, 5 Misc.2d 480, 27 N.Y.S.2d 718 (Sup. Ct. 1941); but cf. Board of Education, etc. v. Public School Employees' Union, 233 Minn. 144, 45 N.W.2d 797, 29 A.L.R.2d 424 (Sup. Ct. 1951). In the Pawtucket case the city filed a bill in equity to enjoin schoolteachers from striking. The trial court granted an injunction and, on appeal, the union urged that there was error in that findings required by the anti-injunction act had not been made. The Rhode Island Supreme Court held that the act had no application to a dispute between a governmental subdivision of the state and governmental employees; in the course of its opinion it stressed that the act contained no language indicating that it was intended to apply to disputes between government and its employees, that the abuses which it was aimed at did not involve such disputes, and that its history clearly "shows that it was enacted to prevent abuses resulting from the use of the injunction in labor disputes arising in private industry." 141 A.2d, at p. 626. The history and terms of the Rhode Island act are wholly comparable to our act which, we are convinced, was not at all intended to apply to a proceeding by a governmental agency of the State to restrain a threatened strike and related coercive activities by governmental employees.
The Union contends that to the extent the August 28th order precluded peaceful picketing it amounted to an *150 unconstitutional deprivation of free speech within Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), and American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855 (1941). But these have been limited by later opinions of the Supreme Court and it is now clear that peaceful picketing for an unlawful purpose may be enjoined without running counter to any constitutional guarantees. See International Brotherhood, etc. v. Vogt, Inc., 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347 (1957); Ind. Dairy Workers, etc. v. Milk Drivers, etc. Local No. 680, supra. In the latter case, this Court flatly rejected a contention that the picketing there engaged in was protected by the due process clause, noting that "peaceful picketing may be enjoined if its purpose is to violate a significant and reasonable state policy established either by legislative or judicial decision." 30 N.J., at p. 184. Since a strike by the employees of the Authority would be illegal, picketing in furtherance thereof would not be constitutionally protected and could properly be enjoined; in the context here we find no merit in the Union's contention that the August 28th order violated its constitutional rights.
The Union cites Radio & T.V., etc. Local Union 1264 v. Broadcast Service, 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965), in support of its contention that the Chancery Division should not have issued its restraint in the absence of a showing that the National Labor Relations Board had declined jurisdiction. The point was not raised in the Chancery Division nor was it included in the statement of questions called for by R.R. 1:7-1 (c); in any event, it has no merit. The cited case involved a labor dispute in private industry over which the National Labor Relations Board had jurisdiction though it might decline to assert it (29 U.S.C.A. § 160(a)); here the dispute was between a governmental agency of the State and its employees over which the Board had no jurisdiction. 29 U.S.C.A. § 152(2). In City of Alcoa v. International Broth. of Elec. Wkrs., supra, the court, in sustaining an injunction against a strike by municipal employees, rejected a claim of federal pre-emption, and *151 properly pointed out that Congress had excluded states and their political subdivisions from the definition of "employer" set forth in the Labor Management Relations Act. 308 S.W.2d, at pp. 478-479. See also International Longshore. Ass'n v. Georgia Ports Auth., supra, 124 S.E.2d, at p. 736; State v. Brotherhood of Railroad Trainmen, 37 Cal.2d 412, 232 P.2d 857, 861 (Sup. Ct.) cert. denied 342 U.S. 876, 72 S Ct. 166, 96 L.Ed. 658 (1951).
Finally, the Union attacks the pending contempt proceeding, urging that the Chancery Division may not punish for its out-of-state activity (cf. Applestein v. United Board & Carton Corp., 35 N.J. 343, 349 (1961); Note, 32 U. Chi. L. Rev. 471 (1965)) and that since that activity was in reliance on the advice of counsel it was not, in any event, contumacious. Cf. In re Cooley, 95 N.J. Eq. 485, 487 (Ch. 1924), aff'd, 103 N.J. Eq. 377 (E. & A. 1928). But the contempt matter is not before us and we need not pass on any of its aspects. No hearing on it has been held and there has, of course, been no adjudication or appeal. The notice of appeal filed by the Union related solely to the order denying the motion to dissolve the August 28th restraint and we have, earlier in this opinion, disposed of all of the issues which bear on that phase of the controversy. The action below is in all respects:
Affirmed.
For affirmance  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, HALL, SCHETTINO and HANEMAN  6.
For reversal  None.