108 N.J. Super. 502 (1970)
261 A.2d 713
TEAMSTERS LOCAL UNION NO. 676, AFFILIATED WITH INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, PLAINTIFF,
v.
PORT AUTHORITY TRANSIT CORPORATION, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Argued December 5, 1969.
Decided January 28, 1970.
*505 Mr. Howard S. Simonoff appeared for plaintiff (Messrs. Plone, Tomar, Parks and Seliger, attorneys).
Mr. E. Stevenson Fluharty appeared for defendant (Messrs. Epstein, Fluharty, Freeman and Gerstein, attorneys).
WICK, J.S.C.
This case is before the court on a motion by Teamsters Local Union No. 676 for instructions concerning a restraining order issued from this court.
In chronological order, the following facts have been presented to the court. On January 13, 1969 the Transport Workers Union of America and its Local No. 234 (henceforth TWU) signed an agreement with the Port Authority Transit Corporation (PATCO) providing that PATCO would recognize TWU as the bargaining agent for PATCO's employees. On January 31, 1969 the Teamsters filed a letter petition with the New Jersey Public Employment Relations Commission (PERC) seeking to have that agency determine the proper bargaining agent for the PATCO employees.
On March 14, 1969 the Teamsters filed the complaint in this action seeking to enjoin PATCO from complying with its agreement with TWU. After several temporary restraining orders were granted a preliminary injunction issued on April 18, 1969 ordering PATCO not to recognize TWU as negotiating agent of PATCO employees "until such time as the New Jersey Public Employment Relations Commission has resolved and finally determined all issues regarding the question concerning whether it or any other Labor Organization represents the employees of Defendant in an appropriate negotiating unit." This was regarded as necessary at the time to maintain the status quo until a determination could be made deciding who should be the bargaining agent for the employees.
*506 On February 28, 1969 TWU filed a suit in equity in the Court of Common Pleas, County of Philadelphia, Commonwealth of Pennsylvania, captioned John Coyle v. PATCO (No. 7632). On June 5, 1969 Judge Eiseman in that action, to which the Teamsters were a party, issued an order enjoining the Teamsters from
* * * enforcing or carrying into effect or attempting to enforce or carry into effect any direction, order or decree issued as a result of any hearing held before the Public Employment Relations Commission of New Jersey affecting the issues or subject matter presently before this court, until the hearings before this court have been concluded and an adjudication filed.
PERC assigned a hearing officer to the dispute and hearings were held on February 12, February 21, 1969 and June 6, 1969. On July 22, 1969 the hearing officer filed his report and recommendations. This report did not make a recommendation as to whether PERC had jurisdiction of the dispute, but decided that if it did, PERC should conduct an election and certify the winner to be the proper bargaining agent of PATCO employees.
On September 23, 1969 PERC issued a decision and direction of election deciding that it had jurisdiction to resolve the dispute and ordered an election to be held. On October 20, 1969 the election was held and the Teamsters were overwhelmingly voted to be the bargaining agent. On November 5, 1969 PERC supplemented its earlier decision and certified the Teamsters as the exclusive representative for the PATCO employees.
On December 5, 1969 the Teamsters brought this motion for instructions on whether to obey the Pennsylvania injunction or N.J.S.A. 34:13A-5.3, which obligates them to bargain with PATCO on behalf of PATCO's employees.
The initial question confronting this court is, who has the power or jurisdiction to determine the bargaining agent for PATCO. The Philadelphia court is also faced with this decision. Before it TWU is arguing that under Pennsylvania *507 law the Common Pleas Court should determine who should represent the employees of a Pennsylvania agency. Before this court the Teamsters argue that PERC, under the laws of New Jersey, has jurisdiction to decide the dispute and this court should enforce its decision.
The whole problem arises because of the unique character of PATCO. PATCO is a corporate subsidiary of the Delaware River Port Authority (DRPA), which is a creature of a compact between New Jersey and Pennsylvania. N.J.S.A. 32:3-1 et seq. and 36 P.S. § 3421 et seq. each contain the compact, which establishes DRPA as a "public corporate instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey" for certain public purposes which include (N.J.S.A. 32:3-2(j)):
The establishment, maintenance, rehabilitation, construction and operation of a rapid transit system for the transportation of passengers, express, mail, and baggage, or any of them, between points in New Jersey within the Port District and within a 35-mile radius of the city of Camden, New Jersey, and points within the city of Philadelphia, Pennsylvania, and intermediate points. Such system may be established by utilizing existing rapid transit systems, railroad facilities, highways and bridges within the territory involved and by the construction or provision of new facilities where deemed necessary, and may be established either directly by purchase, lease or contract, or by lease or agreement with any other public or private body or corporation, or in any other manner.
The provision under which PATCO was created is N.J.S.A. 32:3-13.42(7)(b):
To effectuate any of its authorized purposes either directly or indirectly by or through wholly owned subsidiary corporations. Any such subsidiary corporation shall be a public corporate instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey for such purposes and shall be deemed to be exercising an essential governmental function in effectuating such purposes. Any such subsidiary corporation and any of its property, functions and activities shall have such of the privileges, immunities, tax and other exemptions of the commission and of the commission's property, functions and activities, and such of the rights, powers and duties of the commission, as the commission shall determine.
*508 The issue is what law ought to be applied under the compact to the present dispute  New Jersey's or Pennsylvania's, neither or both. The compact itself is silent on the point and no decision has been handed down on it.
The Public Employees Relation Commission was created by the New Jersey Legislature in 1968 with the power "to resolve questions concerning representation of public employees." * * * N.J.S.A. 34:13A-6(d). N.J.S.A. 34:13A-3(d) defines a public employee as "any person holding a position, by appointment or contract, or employment in the service of a public employer, * * *." A public employer is defined in N.J.S.A. 34:13A-3(c) to mean "the State of New Jersey, or the several counties and municipalities thereof, or any other political subdivision of the State, or a school district, or any special district, or any authority, commission, or board, or any branch or agency of the public service."
When the Delaware River Joint Commission was established in 1931 the enabling act's preamble read: "It is highly desirable that there be a single agency of both states empowered to further the aforesaid interests of both states." N.J.S.A. 32:3-1.
In 1951 N.J.S.A. 32:3-2 was amended to read:
The body corporate and politic, heretofore created and known as the Delaware River Joint Commission hereby is continued under the name of the Delaware River Port Authority (hereinafter in this agreement called the "commission"), which shall constitute the public corporate instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey for the following public purposes, and which shall be deemed to be exercising an essential governmental function in effectuating such purposes, * * *."
On the wording of the statute it is clear to this court that the Delaware River Port Authority and PATCO were created as public service agencies of both Pennsylvania and New Jersey.
In State v. Murphy, 36 N.J. 172 (1961), reversed on other grounds 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), the court was faced with the question of whether *509 the Waterfront Commission of New York Harbor could be ordered to produce its records in a New Jersey court. In holding that it could, the court reasoned:
As the compact expressly states, the Commission is "a body corporate and politic, an instrumentality of the States of New York and New Jersey." N.J.S.A. 32:23-7. The Commission is the agent of each state and of both of them, see Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427 (1938), and exercises a portion of the police power delegated by the states which created it, * * *. [36 N.J., at 185-186]
As the agent of each state, the Commission is subject to all its laws, whether of statutory or common law origin, except insofar as the states agreed expressly or by fair implication to place it beyond them. [Ibid., at 186]
In Delaware River and Bay Authority v. International Organization of Masters, Mates & Pilots, 45 N.J. 138 (1965), a union picketed plaintiff, a bi-state agency of New Jersey and Delaware. The Authority brought suit in the Chancery Division of the New Jersey Superior Court to enjoin the strike, contending that the employees were public employees and prohibited from striking by New Jersey law. The union argued that employees of the Authority were not public employees. In affirming the issuance of the injunction the court said, "The Authority here is an agency of the State and its activities clearly involve a proper exercise of governmental functions." 45 N.J., at 146.
Based on these two cases by our Supreme Court and the statutory language of the compact and the New Jersey Employer-Employee Relations Act, this court is satisfied that PERC does have jurisdiction over the employees of PATCO and any labor dispute in which they are involved. However, it is equally obvious that this same reasoning would permit a Pennsylvania court to determine that PATCO is likewise an agent of Pennsylvania and subject to its statutory or common law regarding public employees.
The difficult question to be faced since both states have concurrent jurisdiction is which law ought to control. Obviously, only one union can represent the employees, but *510 what mechanism should be used to determine who may make the decision?
Congress might have provided for legislation solving this problem under its power to regulate interstate commerce. U.S. Const. Art. 1, § 8. The National Labor Relations Act specifically exempts public employees from its jurisdiction, 29 U.S.C.A. § 152(2), so NLRB cannot resolve the dispute.
The interstate compact between Pennsylvania and New Jersey could have and should have provided a method of resolving this type of controversy which would inevitably arise. See N.J.S.A. 32:1-35.63 as a specific example of this conflict-solving power. From the complexity of the problem created in this case the necessity for legislative action will be apparent.
Since no statutory solutions are available, the judicial process will have to attempt to make the resolution, humble in its knowledge of its own inadequacy.
Because the choice of law between two states with equal jurisdiction is involved, constitutional considerations of full faith and credit, U.S. Const. Art. IV, § 1, are involved. The constitutional consideration arises because both states are asked to apply their own internal law to an agency of a foreign state. It is black letter law that the laws of one state do not operate in any other state ex proprio vigore. 16 Am. Jur.2d, "Conflict of Laws," § 4, at 12; 15A C.J.S. "Conflict of Laws" § 3(1), at 370.
Since no mechanism exists to apply the law of both states, the law of one state will have to be applied binding the other. Under the full faith and credit provision a judgment of this court binding on PATCO should be binding on the Pennsylvania court so long as this court has jurisdiction (which cannot be questioned) and applies the law in conformity with constitutional principles. Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488 (1947); Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943); Klaiber v. Frank, 9 N.J. 1 (1952).
*511 In Alaska Packers Ass'n v. Industrial Accident Comm'n, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935), the Supreme Court was faced with a decision as to which state's law to apply where both were applicable. The court defined its analysis as follows:
The subject of our inquiry is therefore whether the full faith and credit clause requires the state of California to give effect to the Alaska statute rather than its own." [294 U.S., at 546, 55 S.Ct., at 523.]
In the case of statutes, the extrastate effect of which Congress has not prescribed, where the policy of one state statute comes into conflict with that of another, the necessity of some accommodation of the conflicting interests of the two states is still more apparent. A rigid and literal enforcement of the full faith and credit clause, without regard to the statute of the forum, would lead to the absurd result that, whereever the conflict arises, the statute of each state must be enforced in the courts of the other, but cannot be in its own. Unless by force of that clause a greater effect is thus to be given to a state statute abroad than the clause permits it to have at home, it is unavoidable that this Court determine for itself the extent to which the statute of one state may qualify or deny rights asserted under the statute of another. [Ibid., at 547, 55 S.Ct., at 523.]
The enactment of the present statute of California was within state power and infringes no constitutional provision. Prima facie every state is entitled to enforce in its own courts its own statute, lawfully enacted. One who challenges that right, because of the force given to a conflicting statute of another state by the full faith and credit clause, assumes the burden of showing, upon some rational basis, that of the conflicting interests involved those of the foreign state are superior to those of the forum. It follows that not every statute of another state will override a conflicting statute of the forum by virtue of the full faith and credit clause; that the statute of a state may sometimes override the conflicting statute of another, both at home and abroad; and, again, that the two conflicting statutes may each prevail over the other at home, although given no extraterritorial effect in the state of the other. [Ibid., at 547-548, 55 S.Ct., at 524]
This balance of interest test enunciated above has been suggested also as the proper criterion to solve conflict of laws problems which do not rise to constitutional levels. See Mellk v. Sarahson, 49 N.J. 226, 229 (1967); Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475 (1961); HIMC *512 Investment Co. v. Siciliano, 103 N.J. Super. 27, 34 (Law Div. 1968).
According to the September 23, 1969 decision of PERC, a majority of the employees reside in New Jersey. N.J.S.A. 34:13A-5.3 provides that "public employees * * * shall be protected in the exercise of, the right, freely and without fear of penalty or reprisal, to form, join and assist any employee organization." Thus, New Jersey has an interest in protecting the rights of its citizens who work for the State. Admitting that Pennsylvania may have a similar interest,[1] New Jersey has a greater number of its citizens involved and therefore may be considered more interested.
PERC found that
PATCO and its parent authority are both headquartered in Camden, New Jersey. PATCO's main "plant" is in Lindenwold, New Jersey where all rolling stock is stored and its maintenance shop is located. Eight of the twelve stops on the Lindenwold to Philadelphia Rapid Transit Line are in New Jersey. A majority of the employees reside in New Jersey and a large percentage of employees report there at the *513 start of the work day. Pension fund deductions are banked in New Jersey. Payroll checks are issued from the Lindenwold, New Jersey office. All hiring and processing of employee grievances are done by the personnel department employees from the main PATCO office in Camden.
N.J.S.A. 34:13A-2 reads:
It is hereby declared as the public policy of this State that the best interests of the people of the State are served by the prevention or prompt settlement of labor disputes, both in the private and public sectors; that strikes, lockouts, work stoppages and other forms of employer and employee strife, regardless where the merits of the controversy lie, are forces productive ultimately of economic and public waste; that the interests and rights of the consumers and the people of the State, while not direct parties thereto, should always be considered, respected and protected; and that the voluntary mediation of such public and private employer-employee disputes under the guidance and supervision of a governmental agency will tend to promote permanent, public and private employer-employee peace and the health, welfare, comfort and safety of the people of the State. To carry out such policy, the necessity for the enactment of the provisions of this act is hereby declared as a matter of legislative determination.
New Jersey therefore has an interest in resolving labor disputes to prevent strikes by public employees. Again, Pennsylvania may have a similar interest,[2] but because of the greater contacts of PATCO in New Jersey this State would be more greatly affected than Pennsylvania in any labor dispute which might arise.
The sole Pennsylvania contact relied on by TWU is that the contract was signed in Pennsylvania. In the matter of the underlying labor dispute it is difficult to see how this fact has any relevance at all. It is accordingly ignored.
For these reasons this court rules that the tribunals of New Jersey, consonant with considerations of full faith and credit and comity to the law of Pennsylvania, may and should apply its law to resolve the dispute.
New Jersey, through N.J.S.A. 34:13A-1 et seq., has set up procedures for resolving this impasse. PERC has *514 followed those procedures and held an election as provided by N.J.S.A. 34:13A-6(d). As a result of this election and the Teamsters' overwhelming victory, they have been duly certified as the proper bargaining unit for PATCO employees. The justice of this method of resolution satisfies this court that its determination is entitled to be enforced by the law of this State. Accordingly, judgment will be entered in this matter ordering PATCO to abide by PERC's certification. PATCO is therefore enjoined from negotiating with any bargaining agent other than Teamsters Local No. 676 (except an ad hoc committee of employees until the Teamsters actually begin to negotiate on their behalf), unless PERC so orders.
The remaining question is how the decision of this court entering judgment on PERC'S decision may be implemented.
This is the problem of having courts attempt to resolve matters to which they are not suited. A court can only act in personam on persons before the court. Only the Teamsters and PATCO are parties herein. The Transport Workers Union Local Philadelphia counsel wrote to the court on December 9, 1969 requesting "to enter my appearance as counsel for TWU." Leave was granted to enter an appearance on December 15, 1969. On December 23, 1969 counsel for the Transport Workers Union of America, AFLCIO, wrote to advise that he did not regard it proper for TWU to intervene in this action. Consequently TWU is not properly before this court and no order may be made against it.
Even if TWU were properly before this court there is a serious question as to whether it would be proper to enjoin them from enforcing the Pennsylvania court's order. See Annotation, "Foreign Antisuit Injunctions," 74 A.L.R.2d § 7, at 837-841 (1960).
Although the Teamsters' right to represent the employees of PATCO is upheld, its power to do so is not. Prior to PERC's November 5, 1969 certification and this decision the Teamsters were under an order of the Pennsylvania court *515 not to bargain with PATCO. Regardless of the wisdom or propriety of this decision, its validity at its inception will not be challenged here. See 42 Am. Jur.2d "Injunctions," § 214-228 generally, and Annotation, "Injunction  Action in Another State," 6 A.L.R.2d 896 (1949).
The Teamsters argue that PERC's determination should have been binding on the Pennsylvania court under the full faith and credit clause, based on United States v. Utah Construction and Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); Fibreboard Paper Products Corp. v. East Bay Union of Machinists, Local 1304, 344 F.2d 300 (9 Cir.1965); New Amsterdam Casualty Company v. Popovich, 18 N.J. 218 (1955); Gollier v. Unemployment Compensation Board of Review, 162 Pa. Super. 136, 56 A.2d 351 (Super. Ct. 1948).
Even if this is so, the Pennsylvania trial court refused to dissolve its order when petitioned to do so. This court does not sit to review the Pennsylvania courts. If they determine they may validly enjoin the Teamsters, then that decision is binding over here.
There is no power in the courts of New Jersey to restrain the Pennsylvania court from finding the Teamsters in contempt if they violate its order.
There are cases holding that an order issued by a court with jurisdiction over the subject matter and over the person must be obeyed until reversed, modified or set aside by orderly and proper proceedings, even if the order is erroneous, irregular or improvidently rendered. Even if the order is viewed as being unconstitutional, until its unconstitutionality has been judicially declared in appropriate proceedings it may not be violated with immunity. United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), Howat v. Kansas, 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550 (1922).
On the basis of the above, it appears the order of the Pennsylvania court is binding on the Teamsters until it is properly vacated or modified. Therefore this court regards it *516 as its duty to advise the Teamsters to continue to obey this order. The court does not find itself drawn to this conclusion so much on constitution principles as on broader philosophical ones.
The judicial system depends on the public's willingness to accept and obey its decisions regardless of their view of its correctness. Without this moral obligation only military power could enforce the law. If a court abandons this ethic, why should others obey it. It is only by a deep, abiding faith in the law that justice may be done. This court has gone as far as it can in this action. It has faith, as it must, that the Pennsylvania court will recognize its duty to cooperate in order to resolve this conflict which neither court is really suited to handle. If the Pennsylvania court gives full faith and credit to this decision, a mechanism will have been found for settling this type of dispute without tearing the fabric of the cloth of law but while enhancing its capability to deal with interstate controversies.
Because of the decision reached on this motion, there is no need for additional proceedings and an order for judgment may be submitted in accordance with this decision.
NOTES
[1] Pennsylvania has no statute similar to New Jersey's governing public employee-employer relations. It relies on common law decisions and analogy to the private labor relations provisions found in the statutes. Because of this it is difficult to state exactly what Pennsylvania policy and law would be in the present dispute. The state policy permits public employees to organize. Broadwater v. Otto, 370 Pa. 611, 88 A.2d 878 (Sup. Ct. 1952).

43 P.S. § 211.2(c) provides in regard to private employees that:
It is hereby declared to be the public policy of the State to encourage the practice and procedure of collective bargaining and to protect the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection, free from the interference, restraint or coercion of their employers.
On the face of the materials before the court, it does not appear that Pennsylvania policy differs significantly from New Jersey's. Their law governing public employees is quite sparse and does not provide much help to this court.
Although Pennsylvania House of Representatives Bill No. 1443 would provide some statutory procedures, it has not yet passed the Senate and is consequently not part of the law of Pennsylvania.
[2] See 43 P.S. § 215.1, and note 1.