The CITY OF WILMINGTON, a municipal corporation of the State of Delaware, and Department of Commerce, an agency of The City of Wilmington, Plaintiffs,

v.

GENERAL TEAMSTERS LOCAL UNION 326 Affiliated With the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, et al., Defendants.

Court of Chancery of Delaware,
New Castle.

March 27, 1972.

Daniel M. Kristol, Asst. City Solicitor, for plaintiffs.

O. Francis Biondi, of Biondi & Babiarz, Wilmington, for defendants.

MARVEL, Vice Chancellor:

The City of Wilmington and its agency, the Department of Commerce, which is directly responsible for the operation of the municipally owned facilities of the Port of Wilmington, seek the granting of a preliminary injunction against the continuing strike accompanied by picketing now being carried on by members of the defendant General Teamsters Local Union 326 at the Marine Terminal in Wilmington. Such allegedly illegal strike and improper interference by picketing with the business of the Port of Wilmington was commenced on March 13, 1972 after expiration of an agreement concerning defendants' employment by plaintiffs and has continued since.

A motion for a temporary restraining order granting the relief prayed for having been denied because the Court was not then persuaded that the members and officers of the defendant union are in a strict sense public employees forbidden to strike by the terms of 19 Del.C. § 1312,[1] plaintiffs, after briefing and argument, now seek the issuance of a preliminary injunction granting the relief prayed for. If the anti-strike statute referred to above applies, I am satisfied that this Court has jurisdiction to entertain plaintiff's motion inasmuch as the National Labor Relations Act does not apply to " * * * any state or political division thereof", 29 U.S.C.A. § 151 et seq.

Prior to the adoption of Wilmington's Home Rule Charter in November, 1964, Local 326's predecessor, Highway Truck Drivers and Helpers, Local No. 107, had entered into collective bargaining agreements with the Board of Harbor Commissioners, a semi-autonomous agency then responsible for port operations and the hiring of laborers at the Wilmington Marine Terminal, such agency of the City of Wilmington being originally empowered to hire its own employees. See 29 Laws of Delaware, Chap. 123, § 4.

However, on the adoption of the Wilmington Home Rule Charter on November 3, 1964, effective July 1, 1965, the Board of Harbor Commissioners was incorporated into the Department of Commerce by virtue of the provisions of § 4–400–402 of the Wilmington City Charter. Thereafter, on April 28, 1966, the City of Wilmington

1. "No public employee shall strike while in the performance of his official duties."

elected[2] to have its employees[3] included within the provisions of 19 Del.C. § 1301 et seq., which granted to public employees the right to organize and bargain collectively but which banned strikes by public employees. At the time, it must be noted, a collective bargaining agreement concerning the employment of teamsters at the Marine Terminal was in effect.

On September 1, 1967, General Teamsters Local 326 was chartered by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and as a successor to Local 107, which theretofore had worked as teamsters at the docks, became bound by the provisions of a contract previously entered into between the Board of Harbor Commissioners and such latter Local for the period from March 12, 1966 to March 12, 1969. On the expiration of such agreement, defendants entered into a new agreement of May 9, 1969 with the City of Wilmington which fixed the terms and conditions of employment for Teamster workers at the Marine Terminal for the period from March 12, 1969 to March 12, 1972. Such contract set forth the job classifications, wages, and other benefits as well as obligations of the union employees designated to operate the facilities of the Harbor of Wilmington and provided for pension benefits, the terms of which were stated to be more specifically defined in the Wilmington Employees Retirement Act.

On March 13, 1972, the City and the Local having failed to reach agreement on the terms of a new employment contract to replace the expired 1969 contract, the Local declared a strike, and this suit ensued.

■ Defendants oppose the granting of preliminary injunctive relief, as prayed for, and in arguing for the proposition that where the purpose of a strike is not unlawful or in violation of a contractual allegation, such as one to arbitrate, the right to strike is constitutionally protected, cite United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884, International Union v. Wisconsin Employment Relations Board, Local 232, 336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651, and Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed. 2d 199. However, none of these cases is concerned with a strike by public employees, and in the absence of a statute granting such right, public employees have no common law right to strike, Los Angeles Metropolitan Transit Authority v. Brotherhood of R. R. Trainmen, 54 Cal.2d 684, 8 Cal.Rptr. 1, 355 P.2d 905, and Delaware River and Bay Authority v. International Organization of Masters, Mates and Pilots, 45 N.J. 138, 211 A.2d 789. See also 51A C.J.S. Labor Relations § 306, and 48 Am.Jur.2d, Labor and Labor Relations, § 1361.

In support of their contention that injunctive relief would be inappropriate defendants place heavy reliance on the case of Local 266 International Brotherhood v. Salt River Project, 78 Ariz. 30, 275 P.2d 393, to sustain their claimed right to strike as non public employees. However, the cited case is distinguishable from the one at bar. In the cited case, the court decided that the employees of an agricultural improvement district were free to strike for the purpose of attempting to bring about compliance with a collective bargaining agreement. However, the facts indicate that not only was there no state statute prohibiting strikes by public employees involved, but more to the point, the workers in the case were deemed not to be public employees inasmuch as their work benefited solely the inhabitants of the district in which they worked on land which was privately owned, and benefited by irrigation resulting indirectly from such employees' labors. The Court also was of the opinion that in any event an act of the leg-

---

2. By enacting Ordinance number 66–022, as provided for by 19 Del.C. § 1301(a) (3).

3. § 40–2 of the City Code defines employee as: "A person legally occupying a position in the city service.

islature would be required to cause the workers in question to be deemed public employees.

In Delaware, as noted above, a statute provides that no public employee shall strike while in the performance of his official duties, 19 Del.C. § 1312, and the facilities of the Harbor of Wilmington are not only owned by the City of Wilmington but are run for the benefit of the public at large. And the fact that some of such Port facilities are rented to private enterprises as was the case in Mayor and Council v. Recony Sales & Engineering Corporation, 5 Storey 129, 55 Del. 129, 185 A.2d 68, does not, in my opinion, affect defendants' status as employees under contract to the City. According to the affidavit of the Port Director, which is not denied, the disruption of Port activities caused by defendants' strike and picketing has caused the City to incur a loss of business on the daily average of $7,000. And significantly, the income receipts, revenues and moneys received from operations of such facilities were, at the outset of the creation of the Board of Harbor Commissioners, directed to be paid monthly to the City Treasurer for the use of the City, 29 Laws of Delaware, Chap. 123, § 7.

Nonetheless, defendants would have the Court spell out an exception to the general rule that public employees may not strike, reliance again being placed on the case of Local 266 International Brotherhood v. Salt River Project, supra, for the proposition that public employees may strike if their work is of a private nature rather than strictly governmental. However, the overwhelming weight of authority is to the effect that public employees have no right to strike regardless of whether the work which they perform is public or proprietary. See Delaware River and Bay Authority v. International Organization, supra, Annotation, 37 A.L.R.3rd 1147 et seq., 48 Am.Jur.2d Labor and Labor Relations § 1361, and 51A C.J.S., Labor Relations § 306. Defendants nonetheless argue

that their work is connected with a project which the City carries on for profit and that their activities at the Port are therefore not related to an essential governmental function such as police and fire protection, the supplying of water, the maintenance of sewers and garbage disposal facilities, or the operation of a transit system, all of which, when struck, directly affect the health, safety and welfare of the public at large. The Port of Wilmington, on the other hand, it is argued, while owned by the City, is a revenue producing enterprise, which, if kept operating steadily and expanded, can be expected to produce increasingly larger revenues for the City.

Defendants argument, in my opinion, disregards the fact that not only do the shipping activities at the Port affect the public at large by bringing in revenue but as a result of such activities, raw and finished materials are imported into the City which go to maintaining the activities of tax-paying businesses operating within the City. The results of such activities are clearly to the benefit of the citizens of the City.

In other words, it is not, in my opinion, the quantum of the work of a public employee, but the fact that he is one and has accepted such status with the statutory or contractual benefits thereby furnished which set him apart from a worker in the purely private sector, whose employer may, as a result of economic pressures, be unable to continue contract guarantees.

Finally, on evaluating the impact of the present strike on the community at large, I fail to see any substantial distinction between the public need for ferry service, as was the case in Delaware River and Bay Authority v. International Organization, supra, and the need of the Wilmington community for a functioning port. .

Defendants, in fact, while arguing that their work is in the nature of private enterprise, a contention which I have rejected, do not deny that they are employees of

the City for purposes such as being eligible for pensions but rather argue that their past contractual dealings with the City and the Port of Wilmington indicate that it was never intended by the parties that defendants should be classified as public employees for the purposes of 19 Del.C. § 1301 et seq. Thus they point out that no certification as to them has been made to the Department of Labor of Delaware as required for public employees under the terms of 19 Del.C. § 1306. Nonetheless, members of Local 326, as were those of their predecessor, have long been paid by the City under the terms of contracts entered into between them and the Mayor and City Council, the latest having been entered into on May 7, 1969, and under the provisions of Article IX of the parties' contract of such date, an employee under such contract is deemed to be eligible for a City pension under terms more fully specified in the City's Employees Retirement Act. Defendants go on to argue that they and their predecessor have been contracting to furnish their services to the Port of Wilmington for twenty-five years and upwards under several collective bargaining agreements and that for this reason they were excluded from the classified service of City employees set up under Article VII of the City Charter. See § 7–101–K. Defendants contend, in other words, that the employees now sought to be enjoined from picketing and striking were at the time of the adoption of the City Charter the only City employees working under a collective bargaining agreement, and that having been excluded from the operation of the merit system, as well as from the application of other City employee regulations [such as rules having to do with position, salary, dismissal, demotion or suspension, solely on the ground of just cause], they may not be deemed to be the type of public employees forbidden to strike. The question to be decided is therefore the intended effect of relevant provisions of the City Charter when read with the terms of the now expired contract between plaintiffs and defendants in light of the terms of 19 Del.C. § 1301 et seq.

Plaintiffs argue that it was the intention of the parties that defendants were to be allowed to maintain their collective bargaining status with the City only until the expiration of the contract existing at the time of the adoption of the City Charter. Defendants, on the other hand, maintain that what was intended was that the employer-employee relationship, which existed at the time such agreement was entered into, was intended to continue without regard to the terms of 19 Del.C. § 1301 et seq. In support of their contentions, defendants point to the fact that their collective bargaining status, which was originally established by their predecessor with the Board of Harbor Commissioners, has been in existence for twenty-five years and upwards. Thus, it is argued that the City Charter which provides that upon the establishment of a classified service under Article VII of the City Charter: "All employees covered by a collective bargaining agreement at the time of the adoption of this Charter" were to be excluded (§ 7–101(K)) means that such Article was not to apply to them. However, also excluded, among others, by such article, were the city solicitor and assistant city solicitor, who can hardly be said to be other than public employees. In short, I am satisfied that the exclusion now in issue was made on the theory that public employees covered by a collective bargaining agreement had already substantially achieved the benefits normally derived from being a member of a classified service. A review of the now expired contract indicates that the members of Local 326 had been granted through negotiations many benefits provided for in a classified service system, including the right to have a dispute submitted to arbitration, and as far as the certification provisions of 19 Del.C. § 1301 et seq. having to do with the selection of a bargaining unit are concerned, it would appear that defendants and its predecessor having already been recognized as bargain-

ing units, and having already been guaranteed wages, including increases thereof, vacations, seniority rights, promotions, grievance and arbitration procedures, health and welfare insurance, and inclusion in the City pension system, they were in no immediate need of the statutory benefits set forth in 19 Del.C. § 1301 et seq. It should also be noted that the just expired agreement also included a special provision that an employee might not be discharged for refusing to cross a picket line.

 In short, I am of the opinion that members of the defendant union are in fact public employees covered by the provisions of 19 Del.C. § 1312, and, as such, forbidden to strike. Accordingly, a preliminary injunction against the continuance of the strike complained of will be entered inasmuch as I am satisfied that plaintiffs

have carried the burden of establishing the probability of ultimate success on their part on final hearing, Allied Chemical & Dye Corporation v. Steel & Tube Co., 14 Del.Ch. 117, 122 A. 142.

 Finally, having found the strike in question to be illegal and so subject to being enjoined, it follows that picketing in support of such illegal strike must also be enjoined, Port of Seattle v. International Longshoremen's and Warehousemen's Union, 52 Wash.2d 317, 324 P.2d 1099, International Longshoremen's Association v. Georgia Ports Authority, 217 Ga. 712, 124 S.E.2d 733, cert. denied 370 U.S. 922, 82 S.Ct. 1561, 8 L.Ed.2d 503, and Delaware River and Bay Authority v. International Organization, supra.

On notice, an appropriate order may be presented.