The STATE of Delaware and the State Board of Education of Delaware et al., Plaintiffs,

v.

The DELAWARE STATE EDUCATIONAL ASSOCIATION, an unincorporated Association of the State of Delaware, et al., Defendants.

Court of Chancery of Delaware, New Castle.

Oct. 22, 1974.

Regina M. Small, Richard S. Gebelein, Dept. of Justice, Wilmington, for plaintiffs.

Sheldon N. Sandler, Jacob Kreshtool, Bader, Dorsey & Kreshtool, Wilmington, for defendants.

QUILLEN, Chancellor:

This civil action was brought by the State of Delaware and the State Board of Education and various local Boards of Education against the Delaware State Educational Association and certain of its officers and various local Education Associations affiliated with DSEA and various local officers. While the decision on the instant application does not present much difficulty, the reasons for the decision, in light of certain positions taken by the parties, should be understood by the litigants and thus a written opinion was deemed advisable. The present application is for a preliminary injunction. The Court will first review the proceedings to date and establish the pertinent facts.

The event that triggered the lawsuit was a so-called "job action" instituted by DSEA on Thursday, September 5, 1974. On that day there was a 51.9% absenteeism of school employees from their normal job duty. Sixteen school districts were forced to close school.

On the very day of the "job action" this action was instituted and an application for a temporary restraining order filed. At the hearing on the application for a temporary restraining order, it was represented to the Court that the teachers would return to work on the following day, Friday, September 6, 1974. Because of that representation, the Court delayed action on the temporary restraining order and, since the teachers did in fact return to work on Friday, September 6, 1974, no restraining order was entered.

The fact that no restraining order was entered should not be misunderstood. In particular, it should be noted that the Court at that time stated that "the contention that there was no strike today . . . is nonsense. It was obviously a concerted action led by a policy making team designed to close the schools contrary to law."

There is nothing which has been added to the record which alters the Court's conclusion that the so-called "job action" of September 5, 1974 was an illegal strike. Indeed, the record now shows that a repre-

sentative of DSEA publicly took credit for organizing that strike at a news conference on September 9, 1974. Thus, if anything, the statements made at the time of the temporary restraining order hearing have more support in the record and appear to be incontestable.

One argument has been raised throughout to rebut the conclusion that an illegal strike occurred. It has been contended and it is still being contended that, since teachers are entitled to take a personal day during the course of the year, those teachers who left their work in support of the planned action of DSEA did not violate the law. See 14 Del.C., § 1318(f)(10), "Personal reason of the employee." At the hearing for the temporary restraining order, I noted that, in my judgment, the argument is "very unpersuasive". I adhere to that position on this application. It seems to me ridiculous to say the section premitting a personal day is broad enough to permit a teacher to participate in a concerted action the necessary result of which is to close the schools. If one reads the entire law together, including the provision prohibiting strikes [14 Del.C., § 4011(c)] and the provision making it "unlawful for any public school employee to engage in any tactic which circumvents any provision of his teaching contract" [14 Del.C., § 4011(a)], it is readily apparent that the personal day was not intended by the Legislature to permit a bootstrap rationalization to legalize a strike. Without suggesting any improper motive to those who have used the argument, I would say that, in my opinion, the argument has the practical effect of compounding illegality with an evasion of fact.

I conclude that the record establishes without question that there was an illegal strike organized by DSEA on September 5, 1974. This strike is a key fact upon which the plaintiffs rely. It should also be noted that the school employees have worked every work day since the one-day strike. It should also be noted that, to their credit, some teachers, in spite of the September 5th call by DSEA, went to work and did not break the law.

In addition to the fact of a one-day strike on September 5, 1974, the State's case rests largely on the affidavit of Ambrose W. Hagarty concerning a press briefing held by the defendant Thelma Thompson, President of DSEA on September 9, 1974. According to the Hagarty affidavit, the President of the DSEA said in substance:

"(d) That almost any form of job action is possible, including shutting schools down altogether;

"(e) That if an impasse in negotiations concerning its proposal occurred, the DSEA would not hesitate to call a job action;

"(f) That it is very possible that there will be no job action this week, but that one could be called at a moment's notice; and

"(g) That the DSEA does not care now whether a job action is legal or not."

The reply affidavit disputes the Hagarty affidavit in one instance only. The President of DSEA denies saying that DSEA does not care whether a job action is legal or not and suggests that remarks on that subject were in a more limited context. It does not seem to me that the dispute in the affidavits is the most significant factor and I do not find it necessary to resolve that dispute on the instant application.

Other than a largely argumentative dispute between the parties on the legal effect to be given, insofar as irreparable harm is concerned, an interruption in the school year by a school closing, the above facts constitute the heart of the record. In an application for a preliminary injunction, it is always wise to review generally the pertinent legal standards applicable.

An application for a preliminary injunction "is addressed to the sound discretion

of the court, to be guiding according to the circumstances of the particular case." High on Injunctions, (4th Ed.) Vol. 1, Sec. 11; Nebeker v. Berg, 13 Del.Ch. 6, 9, 115 A. 310, 311 (Ch.1921). Furthermore, the preliminary injunction constitutes extraordinary relief generally employed "to do no more than preserve the status quo pending the decision of the cause at the final hearing on proofs taken." Williamson v. McMonagle, 9 Del.Ch. 380, 386, 83 A. 139, 140 (Ch.1912). High on Injunctions, supra, at Sec. 5a.

In exercising its discretion, the Court must ask itself two familiar questions, which have long constituted the backdrop for evaluating the merits of any plaintiff's plea for a preliminary injunction.

Stated briefly, the first question is: "Has the plaintiff satisfied the Court that there is a reasonable probability of his ultimate success on final hearing?" Chancellor Josiah O. Wolcott, in an early case involving the sale of corporate assets, discussed the movant's burden with regard to this question:

"It is well settled that a preliminary injunction will not issue unless the complainant satisfies the court that there is at least a reasonable probability of ultimate success upon a final hearing. This rule has been announced not only in cases where the improbability of utlimate success is because of a question of law (citations omitted), but as well where it appears from an examination of evidence upon a disputed question of fact (citations omitted)."

Allied Chemical & Dye Corporation v. Steel & Tube Co., 14 Del.Ch. 117, 122, 123, 122 A. 142, 158 (Ch.1923). See also, David J. Greene & Co. v. Schenley Industries, Inc., Del.Ch., 281 A.2d 30 (1971); High on Injunctions, supra, at Sec. 8.

The second question can be stated as follows: "Has the plaintiff satisfied the Court that he will suffer irreparable injury if the Court fails to issue the requested preliminary injunction?"

In his treatise on injunctions, James L. High spoke of this concern of equity:

"Substantial and positive injury must always be made to appear to the satisfaction of a court of equity before it will grant an injunction [at Sec. 9] . . . An injunction, being the 'strong arm of equity' should never be granted except in a clear case of irreparable injury, and with full conviction on the part of the court of its urgent necessity." [at Sec. 22].

See also, Bayard v. Martin, 34 Del.Ch. 184, 193, 101 A.2d 329, 334 (Sup.Ct.1953) cert. den. 347 U.S. 944, 74 S.Ct. 639, 98 L. Ed. 1092 (1954). Consolidated Fisheries Co. v. Consolidated Solubles Co., 34 Del. Ch. 24, 99 A.2d 253 (Sup.Ct.1953).

Moreover, this second question of irreparable injury to the plaintiff should injunctive relief be denied has a corollary which requires the Court to consider potential hardship to the defendant. In this regard, Judge Rodney once wrote:

"In the exercise of a sound judicial discretion in the award or denial of a preliminary injunction, the court should balance the conveniences of the parties and the possible injuries to them according as they may be affected by the granting or the withholding of the injunction. Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834."

Aldridge v. Franco Wyoming Oil Co., 9 F.R.D. 278, 279 (D.Del.1949). See also Pauley Petroleum, Inc. v. Continental Oil Co., 43 Del.Ch. 366, 231 A.2d 450 (Ch. 1967), aff'd 43 Del.Ch. 516, 239 A.2d 629 (Sup.Ct.1968); High on Injunctions, supra, at Sec. 13.

And, it is the plaintiff's duty to "tip" that balance:

"While the relative convenience and inconvenience of the parties will prompt

courts to consider questions of harm in exercising the discretionary power of injunction, yet a probable case must always be made out in support of the moving side before the writ will issue."

Allied Chemical & Dye Corp. v. Steel & Tube Co., *supra,* 14 Del.Ch. at 122, 122 A. at 158. See also, Gerity v. Cable Funding, 372 F.Supp. 679 (D.Del.1973).

Justice Tunnell, in his frequently cited opinion in Bayard v. Martin, *supra,* capsulized the task this Court faces in this case:

> "In acting upon applications for preliminary injunctions, a court of equity is bound to 'balance the conveniences' of the respective parties (citations omitted). The probability of ultimate success, being of obvious practical importance, is one of the elements which must always be weighed in the balance, along with the probability of any harm to be suffered by one party or the other on account of giving the requested temporary relief, or withholding it, as the case may be."

34 Del.Ch. at 190, 101 A.2d at 333.

A preliminary injunction is "a form of relief which will never be granted unless earned." Lenahan v. National Computer Analysts Corp., Del.Ch., 310 A.2d 661, 664 (1973).

In this case, the plaintiffs are seeking an order enjoining the defendant associations, their officers, members, agents, and those acting in concert with any or all of them from engaging in any and all actions designed to close schools contrary to law or taking, aiding, encouraging, or supporting any action short of full and faithful performance of their duties as employees of the plaintiffs. The real question is whether the State has offered sufficient evidence to show that there is an imminent threat of an illegal strike which justifies the issuance of the preliminary injunction. I will first deal with the contention of the defendants that the Court should avoid that question.

The defendants contend that this Court should not issue an injunction even if a strike were in progress citing School District for the City of Holland, Ottawa and Allegan Counties v. Holland Education Association, 380 Mich. 314, 157 N.W.2d 206 (1968); School Committee of the Town of Westerly v. Westerly Teachers Association, R.I., 299 A.2d 441 (1973); Timberlane Regional School District v. Timberlane Regional Educational Association, N. H., 317 A.2d 555 (1974). In a narrow holding sense, those three recent cases stand for similar propositions. The *Westerly* case stands for the proposition that an ex parte temporary restraining order should not issue merely "upon the verified complaint of the chairman of the school committee in which it is averred that schools had not opened as scheduled and that irreparable harm would be sustained by the students, parents and citizens of Westerly." The *Holland* case basically stands for the proposition that "it is insufficient merely to show that a concert of prohibited action by public employees has taken place and that *ipso facto* such a showing justifies injunctive relief." The *Timberlane* case holds an injunction should not automatically issue where public teachers have gone on strike.

It is, of course, the general practice in Delaware to hold hearings with notice in labor disputes, even on applications for temporary restraining orders. Thus, our practice is possibly not the same as the practice had been in the three jurisdictions noted. But the philosophy of the opinions cited is broader than the mere holdings. It seems to be threefold.

First, the cases suggest courts should avoid getting involved in labor disputes. The *Holland* case said "it is basically contrary to public policy in [Michigan] to issue injunctions in labor disputes". 157 N. W.2d at 210. In *Westerly*, the Court emphasized "that the solution to the complex problem involving public schools, teachers and collective bargaining rests within the capable hands of the members of [the]

Legislature." 299 A.2d at 446. In *Timberlane*, the Court said: "The courts should intervene in this [collective bargaining process] only where it is evident the parties are incapable of settling their disputes by negotiation or by alternative methods such as arbitration and mediation." 317 A.2d at 559.

Second, the cases suggest that the harm caused by a strike is not significant enough to justify judicial interference. Thus, in *Westerly*, the Court "[concedes] the mere failure of a public school system to begin its school year on the appointed day cannot be classified as a catastrophic event." In *Holland*, court action in labor disputes need a basis in "violence, irreparable injury, or breach of the peace." In *Timberlane*, a substantial interference with "health, safety and welfare" is suggested.

Third, and contrary to a noninvolvement policy, the cited cases suggest that other factors in addition to the fact of an illegal strike need be considered by courts, such as whether negotiations have been conducted in good faith. See the *Westerly* case at 299 A.2d 446, the *Holland* case at 157 N. W.2d 211 and the *Timberlane* case at 317 A.2d 559. The *Westerly* Court said ex parte relief "can make the judiciary an unwitting third party at the bargaining table and a potential coercive force in the collective bargaining processes."

The philosophy of these three cases necessitates two comments by this Court. First, that philosophy is contrary to the judicial experience in the State of Delaware and contrary to our clear precedents. Second, a review of our precedents in light of these decisions only emphasizes the wisdom of the Delaware decisions and the extremely shaky foundation suggested by the reasoning of these three cases.

■ Delaware law is clear. We have recognized that, at common law, public employees are not entitled to collective bargaining and public employees are without power to enter collective bargaining agreements. State v. American Federation of State, County and Municipal Employees, A.F.L.–C.I.O., Local 1726, Del.Ch., 298 A. 2d 362, 367 (1972). We have also recognized in judicial opinion the general common law rule that, even in the absence of an express statutory provision, public employees are denied the right to strike or to engage in a work stoppage against a public employer. Anno., 37 A.L.R.2d 1148, 1156. City of Wilmington v. General Teamsters Local Union 326, Del.Ch., 290 A.2d 8, 10 (1972). Moreover, we have statutes which clearly prohibit strikes by public employees, 19 Del.C., § 1312; 14 Del.C., § 4011(c). Indeed, it is in effect an express condition of the statutory right of public employees to organize that the Union is given the duty not to strike. City of Wilmington v. General Teamsters Local Union 326, Del. Supr., 321 A.2d 123, 127, footnote 10 (1974). Confronted by an illegal strike by public employees, this Court's authority to issue preliminary injunctive relief, including temporary restraining orders, and to enforce such relief through its contempt powers, as well as other equitable powers, cannot be questioned. City of Wilmington v. The American Federation of State, County and Municipal Employees, A.F.L.– C.I.O., Local 320, Del.Ch., 307 A.2d 820 (1973); City of Wilmington v. General Teamsters Local Union 326, Del.Supr., 321 A.2d 123, 125, footnote 4 (1974). Faced with such an illegal strike, an equity court is generally acknowledged to have the power to apply injunctive coercion wherever it will do the most good. City of Wilmington v. The American Federation of State, County and Municipal Employees, A.F.L.– C.I.O., Local 320, *supra*, at 307 A.2d 822. As long as a union is functioning as a union, it must be held responsible for the mass action of its members. City of Wilmington v. General Teamsters Local Union 326, Del.Supr., 321 A.2d 123, 128 (1974). Although it is difficult to foresee and generalize about all circumstances in all labor disputes involving public employees, this Court has not hesitated to enjoin or restrain illegal strikes including

strikes by school employees. City of Wilmington v. General Teamsters Local Union 326, Del.Ch., 290 A.2d 8 (1972); State of Delaware, et al. v. Conrad Chapter of The Delaware Federation of Teachers, et al., Civil Action No. 4030, order dated October 16, 1972.

Turning to the reasoning of the three opinions cited by the defendants, it should first be noted that the rule against strikes by public employees is deeply embedded in the common law, and Delaware is a state with a strong common law tradition. Moreover, in Delaware, the prohibition has been confirmed by statute. It is difficult to imagine how the public policy of this State could be more strongly stated than it is in our statutes prohibiting strikes by school employees and other public employees. It is the Court's duty to recognize the public policy which has been established by our Legislature. The Court can no more avoid that duty in this area than it can in any other area. I turn now specifically to the three policy consideration gleaned from the cases cited by the defendants.

■ First, of course, courts do not enjoy getting involved in labor disputes. It is a difficult area of the law and the Court has difficulty coming through such litigation without being scarred. But courts do not exist to avoid scars or complex problems. Courts exist to enforce the law. Simply because a judge or a group of judges think that a given problem could be better handled elsewhere is no basis for the Court to avoid its responsibility to enforce existing law. Judges do not enjoy the luxury of choosing the litigation that is brought before their Court. Thus, the first policy ground gleaned from the cases of the defendants makes no sense at all. Contrary to a philosophy of avoidance of involvement, the courts have a duty to enforce the public policy established by the law and enacted by the General Assembly when a case is brought before them.

■ The second policy ground gleaned from the cases cited above suggests the harm caused by a strike is not of sufficient significance to justify judicial interference. In so suggesting the three decisions simply misunderstand the nature of irreparable harm. Irreparable harm does not depend on a catastrophe or on violence or on an epidemic. Irreparable harm depends on interference with a legal right and should be judged by traditional equitable principles applicable in all cases for preliminary relief. Generally, irreparable harm exists when the injury cannot be adequately compensated in damages. 43 C.J.S., Injunctions, § 23b(1), pp. 447-448, Richard Paul, Inc. v. Union Improvement Co., 32 Del.Ch. 332, 86 A.2d 744 (1952); modified on other points only, 33 Del.Ch. 113, 91 A.2d 49, 54 (1952). It is not necessary that the injury be beyond the possibility of repair by money compensation but it must be of such a nature that no fair and reasonable redress may be had in a court of law and that to refuse the injunction would be a denial of justice. High on Injunctions, *supra*, § 22; 42 Am.Jur.2d, Injunctions, § 49, p. 789. To be a substantial legal injury for irreparable harm purposes, it is not even necessary that the pecuniary damage be shown to be great. 43 C.J.S., Injunctions, § 23(b); Richard Paul Inc. v. Union Improvement Co., *supra*.

In cases of illegal strikes by public employees irreparable harm would generally seem apparent from the interference with rights of others by illegal acts. 48 Am. Jur.2d, Labor and Labor Relations, § 1407; Anno., 37 A.L.R.3d 1147. There is obviously no comparison between a school closing caused by an illegal strike and one duly directed by proper authority. And, as the Court in this case noted at the hearing on the temporary restraining order, in a school strike situation, there can be "staggering" economic waste as well as human waste. Moreover, in an illegal strike situation, there is generally no hardship to the defendants to weigh in opposition save the

duty to obey the law. In short, without trying to list every conceivable harm caused by an illegal strike by school employees, there simply can be no doubt that, under the State law, school children have a right to go to school, indeed they are required to go to school, and no one should be permitted through illegal action to interfere with the right and the duty of children to attend school.

The answer to the third policy gleaned from the defendants' cases is equally simple. The Court does not act to interfere in the collective bargaining process on one side or the other. The Court enjoins a strike. Public employees have no legal right to strike and, if they are using the strike as part of the bargaining process, they are bargaining illegally. It is not even generally an answer to say that the public employer is violating the law in some respect. Although one might imagine a case where equitable relief should be denied because of some unclean action by the public employer, the normal response to illegal action by the public employer should be a legal action to compel the public employer to obey the law. It should not be an illegal strike.

Thus, it should be made clear that the trend of the Delaware Court decisions is quite different than that suggested by the opinions cited by the defendants. In Delaware, the courts get public policy from the statute enacted by the General Assembly. The courts enforce the law.

With this legal background I turn to the merits of this instant application. The gist of the State's case lies in the claim that there is an imminent threat of a strike by school employees. That threat is supported in the record by the comments made by the President of DSEA at a news conference indicating DSEA "would not hesitate to call a job action" and that "one could be called at a moment's notice".

While the Court might deplore a scantily veiled threat to call an illegal strike, the Court cannot react to that in isolation. It seems clear that it would be unfair and unreasonable to enter injunctive relief on the basis of the present record when viewed as a whole.

The facts are simple, the school teachers did not report for work on one day. They have worked every day since the one-day strike. Their specific acts speak more clearly than any vague comment of one defendant. Indeed, there is no specific threat of illegal activity pending at this moment. The broad injunction sought by the State is not based on a current situation of mass illegality but rather on a current situation of uncertainty which does not lend itself to specific relief. On the basis of the record, the Court must conclude that the teachers are performing their contract obligations in an acceptable fashion.

■▬▬▬ In short, on the present record, there is no basis for a preliminary injunction under normal equitable principles. A preliminary injunction will issue when the Court of Chancery is convinced that, without it, serious injury of a nature calling for equitable relief will probably be suffered by the plaintiffs before final judgment can be entered. Bayard v. Martin, *supra*, at 34 Del.Ch. 193, 101 A.2d 334. Relief will not be granted merely to allay the fears or apprehension of the plaintiff where there is no showing or reasonable ground for believing that the defendant is about to commit the wrongs complained of or where it appears that he is without the opportunity or the intention of so doing. High on Injunctions, *supra*, § 22, p. 37. The State has not shown a reasonable probability of success for injunctive relief given the fact that the one-day strike is over and the teachers have returned to work for many days. The present absence of an imminent threat as shown on the record also means a preliminary injunction is not necessary to prevent irreparable harm. The status quo does not require judicial intervention.

Moreover, without judging the legality of any particular activity, the Court notes with some encouragement that the affidavit of the President of DSEA suggests lawful picketing as an example of a job action. Certainly, there are clearly lawful means by which a bargaining unit can make its case with the public and at the same time fulfill its duty to continue vital services by a full and faithful service of employment. The Wilmington City Police recently concluded a new contract without any sacrifice of their public duty and without unlawful methods of negotiation. On the present record, the Court must assume, absent evidence to the contrary, that the teachers will continue to act in a lawful manner.

The application for preliminary injunction is denied. It is so ordered. The State has not shown that there is an imminent threat of an illegal strike which justifies preliminary relief. On the present state of the record, the State has established neither the probability of success at a final hearing nor irreparable harm in the absence of relief.

At oral argument, the defendants verbally asked that the hearing on the plaintiffs' application for a preliminary injunction be the final hearing in the case. See Rule 65. The plaintiffs resisted that application. The Court denies the application of the defendants for several reasons. First, it was made for the first time at oral argument without any opportunity for the State to anticipate the application either factually or legally. Second, there is still some uncertainty about the area within dispute and it would therefore seem premature to suddenly dismiss the lawsuit over the plaintiffs' opposition, especially in light of the one-day strike which has occurred. Third, the plaintiffs should have an opportunity to develop the record factually in normal course. Accordingly, the application of the defendants to declare that the hearing held was the final hearing and to dismiss the case is denied. It is so ordered.