**ANCHORAGE EDUCATION ASSOCIATION, Appellant,**

v.

**ANCHORAGE SCHOOL DISTRICT, Appellee.**

No. 5021.

Supreme Court of Alaska.

Aug. 6, 1982.

John B. Patterson and John R. Strachan, John R. Strachan, P. C., Anchorage, for appellant.

Peter C. Partnow, Hellen & Partnow, P. C., Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

OPINION

CONNOR, Justice.

This is an appeal from a temporary restraining order issued by the superior court which determined that the ongoing strike by public school teachers was illegal and which ordered the teachers to return to their classrooms. We agree that the entry of the order was proper.

In late 1978, Anchorage public school teachers and the Anchorage School District began to negotiate a collective bargaining

agreement for the 1979–1980 school year. By September, 1979, the parties had not reached an agreement. In response, the teachers decided not to appear at the first scheduled day of classes on September 5, 1979. The teachers were still on strike on September 10th when the superior court issued the temporary restraining order. Later, the superior court issued contempt citations and bench warrants for those teachers who had ignored the order. The parties then agreed to a settlement plan, which was included in a settlement order issued by the superior court. Following the agreement and order, the teachers returned to their classrooms.

Before reaching the merits of this controversy, we find it necessary to address the question of whether this is an appealable order. Former Alaska Appellate Rule 5 stated:

"An appeal may be taken to this court from a final judgment entered by the superior court or a judge thereof in any action or proceeding, civil or criminal . . . ."[1]

The appeal in this matter was taken from an October 1, 1979, judgment which adopted the appointed arbitrator's report and confirmed the September 10th order. The October 1st order did not change the character of the September 10th order, which was a temporary restraining order. By its nature, such an order is tentative and remains in effect pending a fuller consideration of the issues. *See* 7 J. Moore & J. Lucas, Moore's Federal Practice ¶ 65.05, at 65–73 (2d ed. 1980). Such an order cannot be considered a "final judgment" for purposes of former Appellate Rule 5.

■ Under the circumstances in this case, however, we choose to apply former Appellate Rule 46. Rule 46 stated:

"These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by this court where a strict adherence to them will work surprise or injustice."

For almost all purposes, the temporary restraining order was the final statement by the superior court on the issue of whether teachers have a legitimate right to strike. Since the order and the agreement thereafter settled the strike, subsequent judicial proceedings of a more final nature might have been subject to dismissal on grounds of mootness. Thus, as long as strikes are settled by non-final orders by the superior court, these issues would continually evade review. Even with these concerns, we do not approve of the parties' procedure in bringing this matter as an appeal. The strike settlement agreement of September 14, 1979, provided that

"All pending litigation shall be withdrawn by the parties with prejudice with each party bearing its own costs and attorneys' fees, except that the [Anchorage Education] Association may seek a declaratory judgment on the sole issue of the legality of strikes by public school teachers against school districts in Alaska."

The teachers did not proceed to the declaratory judgment stage, but, contrary to their own agreement, appealed indirectly from the restraining order. By not continuing to a declaratory judgment, only the hastily developed evidence on the effects of the strike and the hurriedly prepared memoranda of legal arguments from the injunctive proceeding formed the record on appeal. In light of the social and legal issues involved, this controversy would have benefited from the more complete consideration available in the proceedings for declaratory judgment. However, in the interest of judicial economy, and because of the importance of the issues involved, we have decided to relax the normal rules and proceed to a consideration of the merits of this case, as though a declaratory judgment had been entered.

■ We turn now to whether Alaska statutory law gives teachers the right to strike. The Public Employment Relations Act (PERA) divides "public employees" into three groups for the purpose of defining the

---

1. Former Appellate Rule 5 is now Appellate Rule 202. Pursuant to Supreme Court Order No. 439 (Oct. 21, 1980), this case is governed by the old appellate rules.

right to strike. AS 23.40.200(a). One group, which includes police and fire protection employees, correctional institution employees and hospital employees, is prohibited from striking, but is accorded the right to submit to binding arbitration. AS 23.40.-200(b). Another group may engage in unlimited strikes. AS 23.40.200(d). An intermediate group may engage only in limited strikes:

> "The class in (a)(2) of this section is composed of public utility, snow removal, sanitation and public school and other educational institution employees. Employees in this class may engage in a strike after mediation ... for a limited time."

AS 23.40.200(c). At first glance, section 200(c) includes teachers. But the definition section of PERA, AS 23.40.250(5), excludes "teachers" from PERA wherever "public employee" appears.[2] Thus, teachers, who are not "public employees" for purposes of PERA, are not covered by AS 23.40.200.[3]

The Anchorage Education Association argues that the above construction renders the term "public school ... employees" in section 200(c) meaningless. The argument is correct only if teachers are the only public school employees.[4] Since other certificated employees, such as principals and counselors, are also public school employees, that term is not meaningless in light of our construction. Section 200(c) may well give certificated non-teaching employees the right to strike without giving teachers the right to strike.[5]

The legislative silence in this matter should be interpreted in light of the commonly held rules of public labor relations as of 1972, the time the legislature enacted PERA. By 1972, not one of the jurisdictions which had considered the question of strikes by public employees had found such strikes to be legal in the absence of express statutory permission. *See Bennett v. Gravelle,* 323 F.Supp. 203, 208 (D.Md.1971), *aff'd,* 451 F.2d 1011 (4th Cir. 1971), *cert. dismissed,* 407 U.S. 917, 92 S.Ct. 2451, 32 L.Ed.2d 692 (1972) (applying Maryland common law); *Kirker v. Moore,* 308 F.Supp. 615, 622 (S.D.W.Va.1970), *aff'd,* 436 F.2d 423 (4th Cir. 1971), *cert. denied,* 404 U.S. 824, 92 S.Ct. 49, 30 L.Ed.2d 51 (1971) (applying West Virginia common law); *Norwalk Teachers' Association v. Board of Education,* 138 Conn. 269, 83 A.2d 482, 485 (1951); *Board of Education v. Redding,* 32 Ill.2d 567, 207 N.E.2d 427, 430 (Ill.1965); *Anderson Federation of Teachers v. School City,* 252 Ind. 558, 251 N.E.2d 15, 17 (1969), *cert. denied,* 399 U.S. 928, 90 S.Ct. 2243, 26 L.Ed.2d 794 (1970); *Jefferson County Teachers Association v. Board of Education,* 463 S.W.2d 627, 628 (Ky.App.1970), *cert. denied,* 404 U.S. 865, 92 S.Ct. 75, 30 L.Ed.2d 109 (1971); *Minneapolis Federation of Teachers, Local 59 v. Obermeyer,* 147 N.W.2d 358, 366 (Minn.1966); *Board of Ed-*

---

2. AS 23.40.250 reads in part:
   "Definitions. In §§ 70–260 of this chapter, unless the context otherwise requires,

   .  .  .  .  .

   (5) 'public employee' means any employee of a public employer, whether or not in the classified service of the public employer, except elected or appointed officials or teachers or noncertificated employees of school districts; . . . ."

3. The definition of public employees excludes teachers and noncertificated employees "unless the context otherwise requires." Because of the substantial problems with interpreting AS 23.40.200 to *include* teachers and noncertificated employees, we cannot say that the context *requires* such a construction. For example, the basis, if any, for regulating their right to strike would be unclear. *See* page 996 *infra.* Further, such a construction would leave noncertificated employees in the anomalous position of

having the right to form a union and the limited right to strike, but no right to compel their employer to collectively bargain. *Kenai Peninsula Borough School District v. Kenai Peninsula Dist. Classified Ass'n.,* 590 P.2d 437, 438–40 (Alaska 1979) (holding that non-certificated employees are not covered by the collective bargaining provisions of PERA).

4. We note that the use of "teachers" in AS 23.40.250(5) is not entirely clear. In Title 14 (Education), "teachers" is sometimes defined to include other certificated employees. However, in the absence of specific guidance from the legislature, we will give the word its ordinary meaning in this context.

5. We are not, however, deciding the question of whether other certificated employees have the right to strike.

*ucation v. New Jersey Education Association*, 247 A.2d 867, 876 (N.J.1968); *City of Minot v. General Drivers and Helpers Union, No. 74*, 142 N.W.2d 612, 618 (N.D.1966); *Goldberg v. City of Cincinnati*, 26 Ohio St.2d 228, 271 N.E.2d 284, 288 (1971); *IBEW, Local 976 v. Grand River Dam Authority*, 292 P.2d 1018, 1021 (Okl.1956); *City of Pawtucket v. Pawtucket Teachers' Alliance*, 87 R.I. 364, 141 A.2d 624, 628 (1958); *City of Alcoa v. Local 760, IBEW*, 308 S.W.2d 476, 481 (Tenn.1957); *Port of Seattle v. International Longshoremen's & Warehousemen's Union*, 52 Wash.2d 317, 324 P.2d 1099, 1103 (1958). Against this background, we cannot say that the absence of legislative action implies permission to strike. Rather, it is more reasonable to assume that the legislature intended that in its silence, the generally held rule would be followed. Had it wanted to allow teachers to have the legal ability to strike, it could have explicitly made the definition section, AS 23.40.250(5), inapplicable to AS 23.40.-200. This would have clearly indicated that the law in the majority of states was not to be followed.

■ Since the legislature has neither expressly given the teachers the right to strike nor explicitly prohibited work stoppages, we must address whether there is a right to strike derived from the common law. No court has held that the common law permits public employees to legally strike in the absence of explicit statutory consent.[6] Our reasons for following the majority rule are not founded on the traditional fear of strikes as illegal conspiracies, *see, e.g., UAW, Local 232 v. Wisconsin Employment Relations Board*, 336 U.S. 245, 257–58, 69 S.Ct. 516, 523, 93 L.Ed. 651, 665 (1949), but rather on a recognition of the special role that teachers fill in society and our acknowledgment of the functional limitations of this court when attempting to make social policy decisions.

Resolution of this controversy involves a delicate balancing of the citizens' need for a timely school year and of the teachers' need for an effective tool to influence their working conditions. *See* Kheel, Strikes and Public Employment, 67 Mich.L.Rev. 931, 932 (1969). While a teachers' strike would not directly affect the public's safety as would a police officers' strike, nonetheless teachers can be considered indispensable to the daily functioning of society during the scheduled academic year. *See* Note, Labor Relations in the Public Service, 75 Harv.L. Rev. 391, 410 (1961). Either refusing teachers the right to strike or finding such a right in Alaska common law would be an action by this court tipping the social balance in this state's labor relations. This social balance is more properly set by the legislature. *See Port of Seattle v. International Longshoremen's & Warehousemen's Union*, 52 Wash.2d 317, 324 P.2d 1099, 1103 (1958). Thus, as a matter of common law in the area of labor relations, we will defer to what we believe the legislature intended by its silence.

The second reason for our decision is a realization of our functional limitations. If we found a right to strike, we would be allowing teachers to strike without the attendant mutual employee/employer obligations, *see* Smith, State and Local Advisory Reports on Public Employment Labor Legislation: A Comparative Analysis, 67 Mich. L.Rev. 891, 897 (1969), which have contributed to the fairness of strikes. It is beyond our power to create a system of legislation and regulations to ensure a fair setting for strikes. *See* Wellington & Winter, The Limits of Collective Bargaining in Public Employment, 78 Yale L.J. 1107, 1127 (1969).

The teachers argue that if they have no common law right to strike and if they are excluded from the strike provisions of PERA, then their right to equal protection of the laws has been violated.[7] Their argu-

---

6. *See* cases cited at pages 995–996 *supra.* Since 1972, more recent opinions have followed the majority rule. *See, e.g., State v. Delaware State Educational Association*, 326 A.2d 868, 874 (Del.Ch.1974); *City of Pana v. Crowe*, 57 Ill.2d 547, 316 N.E.2d 513, 514 (1974); *Abney v. City of Winchester*, 558 S.W.2d 622, 623 (Ky. App.1977).

7. United States Const., amend. XIV, § 1; Alaska Const., art. I, § 1. We need only analyze

ment is that teachers, unlike other public employees, are allowed neither the right to strike nor the right to engage in binding arbitration.

■ However, unequal treatment is permissible if it is substantially related to the legitimate purposes of the legislation. *State v. Erickson*, 574 P.2d 1, 12 (Alaska 1978). The legislature declared in section 70 of PERA that

"it is the public policy of the state to promote harmonious and cooperative relations between government and its employees and to protect the public by assuring effective and orderly operations of government."

AS 23.40.070. The state assuredly has a legitimate interest in furthering these policies. Thus, we must determine whether the exclusion of teachers from PERA bears a fair and substantial relation to the purposes of promoting cooperative employment relations and assuring smooth government operations.

■ It is apparent that the legislature chose to define "public employees" as excluding teachers from PERA because the cooperative relations purpose of PERA was already fulfilled with regard to teachers under the provisions of Title 14 (Education). As to teachers, that title provides for collective bargaining (AS. 14.20.555 and AS 14.-20.560), for mediation (AS 14.20.550), and for binding arbitration in grievance proceedings (AS 14.20.590). The teachers argue that in the absence of the right to strike, the right to engage in binding arbitration is needed in order to discourage bad faith negotiations by the employers. While it is true that binding arbitration rights may give the teachers greater bargaining leverage, we cannot say that it is required as a means of ensuring cooperative relations. In addition, the employers are required to negotiate in good faith. AS 14.-20.550. We conclude, therefore, that the provisions of Title 14 are substantially re-

lated to the purpose of promoting cooperative relations between teachers and their employers.

Exclusion of teachers from the right to strike provisions of PERA is also substantially related to the purpose of ensuring the continuing operation of a government service. The teachers argue, however, that they were denied equal protection because, unlike other public employees without the right to strike, they were not accorded binding arbitration rights. In *Hortonville Education Association v. Hortonville Joint School District*, 66 Wis.2d 469, 225 N.W.2d 658 (1975), the Wisconsin Supreme Court was confronted with the same constitutional challenge. The court found that the legislature was justified in treating teachers differently than police and firefighters:

"If police or firemen go on strike the imminent and immediate danger to the community is so great that every reasonable measure must be taken to get them back on the job as soon as possible, or to prevent them from striking in the first instance."

*Id.* at 666. Similarly, the Alaska legislature appears to have determined that those employees in AS 23.40.200(b) are so essential that no work stoppage on their part could be tolerated. The legislature was willing to relinquish a part of the decisionmaking authority of public employers to permit binding arbitration in order to ensure that work stoppages in certain essential fields would not occur. It is permissible for the legislature to have found that teachers, although necessary to the functioning of society so as to forbid strikes, were not so essential as to require compulsory arbitration. Thus the strike provisions of AS 23.40.200 are substantially related to the legislative goal of uninterrupted school operation.

■ Finally, the teachers contend that even if their strike was illegal, the superior court should not have issued an injunction unless it made a separate finding of irrepa-

the equal protection challenge under the standard applicable to the Alaska Constitution, because if the statute is valid under the Alaska

"substantial relationship" standard, then it is valid under the less strict federal "rational basis" standard.

rable harm. Only a minority of jurisdictions impose the requirement of irreparable harm in addition to illegality. *See School District No. 351 v. Oneida Education Association*, 98 Idaho 486, 567 P.2d 830, 834 (1977); *School District v. Holland Education Association*, 380 Mich. 314, 157 N.W.2d 206, 210–11 (1968); *Timberlane Regional School District v. Timberlane Regional Education Association*, 114 N.H. 245, 317 A.2d 555, 559 (1974); *School Committee v. Westerly Teachers Association*, 111 R.I. 96, 299 A.2d 441, 445 (1973).[8]

We reject the minority rule. In the other jurisdictions, illegality of the strike is a sufficient harm to justify injunctive relief. *See Delaware River & Bay Authority v. International Organization of Masters, Mates & Pilots*, 45 N.J. 138, 211 A.2d 789, 795 (1965) and cases cited at pages 995–996 *supra*. Implicit in the majority rule is the recognition that by making these strikes illegal, the legislature has decided that a teachers' strike would cause irreparable harm. *See State v. Delaware State Educational Association*, 326 A.2d 868, 875–76 (Del.Ch.1974).

The decision of the superior court is AFFIRMED.

RABINOWITZ, Chief Justice, dissenting.

I concur in all aspects of the court's decision except for its rejection of the teachers' equal protection challenge to their exclusion from the strike and binding arbitration provisions of the Public Employment Relations Act.

The teachers claim that their exclusion from the strike and binding arbitration provisions of PERA violates their right to equal protection of the law under art. I, section 1 of Alaska's constitution. The challenged exclusion involves a double classification: unlike other educational employees such as principals and counselors who are apparently given a limited right to strike under AS 23.40.200(c)[1] the teachers are prohibited from striking; unlike other public employees such as police and firefighters, who are denied the right to strike but who are granted binding arbitration,[2] the teachers have neither strike rights nor binding arbitration. Thus the equal protection issue here is whether the exclusion of school district teachers is "substantially related" to the purposes of PERA.

One of the primary purpose of PERA is to provide rational and effective guidelines for public employment relations.[3] While providing for public employee participation in the determination of wages and working conditions, PERA attempted to balance the employees' need for effective means of bargaining with the state's need to maintain uninterrupted services in certain essential governmental operations. The result of this balancing process was that certain "non-critical" public employees were granted a general right to strike, "semi-critical" public employees were allowed a limited right to strike, and "critical" public employees were denied any right to strike.[4] AS 23.40.200. In return "critical" employees were given the right to enter binding arbitration if negotiations reached an impasse. AS 23.40.200(b). Given these provisions the

**8.** The teachers' reliance on *San Diego Teachers Association v. Superior Court*, 24 Cal.3d 1, 154 Cal.Rptr. 893, 593 P.2d 838 (1979), is misplaced. The court expressly stated that "it is unnecessary here to resolve the question of the legality of public employee strikes if the injunctive remedies were improper . . . ." *Id.*, 154 Cal.Rptr. at 897, 593 P.2d at 842.

**1.** The majority states that it is not deciding the question of whether other certificated public school employees have the right to strike. The majority acknowledges, however, that if these employees are also denied the right to strike then the term public school employees in section 200(c) is meaningless.

**2.** AS 23.40.200(b).

**3.** AS 23.40.070.

**4.** The term "semi-critical" employees include public utility, snow removal, sanitation, public school and educational institution employees. AS 23.40.200(c). "Critical" workers include police, fire protection, correctional and hospital employees. AS 23.40.200(b). The "non-critical" class consists of all public employees who are not included in the other two classes. AS 23.40.200(d).

question which must be answered is whether the exclusion of public school teachers from any of the foregoing categories is reasonable in light of the purposes of PERA.

The court concludes that the exclusion of teachers from the strike-binding arbitration provisions of PERA is constitutional on the rationale that the legislature could constitutionally "have found that teachers, although necessary to the functioning of society so as to not forbid strikes, were not so essential as to require compulsory arbitration."[5] In my opinion this distinction is based on a mistaken view of the purpose behind the compulsory arbitration provisions. Under PERA the category of "critical" employees was granted the right to binding arbitration to compensate for the total denial of a right to strike. In essence the legislature realized that while a ban on strikes for "critical" public employees was necessary, such a ban placed these employees in a disadvantageous bargaining position. Therefore, in the interest of fair and meaningful negotiations these employees were given the right to binding arbitration. It follows that in situations where negotiations were deadlocked, the state would be assured that essential services would continue to be provided and the employees would be assured of a viable means of resolving labor disputes with the state. Viewed in this perspective, the denial of binding arbitration to teachers, coupled with the ban on strikes seems at odds rather than "substantially related" to the purposes of PERA in that it significantly handicaps public school teachers in their collective bargaining efforts.

If public school teachers are so essential to society that they must be denied the right to strike then they should also be given the right to compulsory arbitration. On the other hand, if teachers are not as essential as the "critical" employees then they should enjoy the same limited strike rights given to other "semi-critical" public employees. The court's recognition of a separate category of public employees occupying a position between these two groups is in my judgment mistaken.

The majority acknowledges that the teachers are disadvantaged by their exclusion from PERA but concludes that while binding arbitration would improve the teachers bargaining position, it is not a required means for furthering the purposes of PERA. The question is not, however, whether the legislature is required to grant arbitration rights to public employees; rather, it is whether the legislature, having granted strike or binding arbitration rights to a substantial portion of public employees, can lawfully deny these same rights to a particular sub-class of public employees. In order to justify the exclusion of a particular group of citizens from the benefits of a legislative act it must be shown that there is a substantial difference between the group excluded and the group covered by the act. The suggested difference must be such that it is reasonable to treat the group differently with respect to the legislation in question. *State v. Erickson,* 574 P.2d 1, 11 (Alaska 1978); *Isakson v. Rickey,* 550 P.2d 359, 362 (Alaska 1976). In my view, no persuasive reason has been advanced for the exclusion of public school teachers from the limited right to strike—binding arbitration provision provided for in AS 23.40.200.

Thus, I conclude that the exclusion of the teachers from the strike and arbitration provisions of AS 23.40.200 violates the equal protection clause of Alaska's constitution.[6]

---

**5.** *Citing Hortonville Ed. Ass'n v. Hortonville Joint School Dist.,* 66 Wis.2d 469, 225 N.W.2d 658 (1975).

**6.** Implicit in my position is the rejection of the District's argument that the legislature's provision for mediation (AS 14.20.570) and binding

arbitration in grievance proceedings (AS 14.20.-590), as well as requiring the state to negotiate in good faith (AS 14.20.550) legitimizes that failure of PERA to grant public school teachers either the right to strike or to binding arbitration.