QUESTIONS PRESENTED AND ANSWERS
The questions presented by Minority Leader McElhany are:
1. Under current law, do state employees have the right to refuse to work or perform as a group, more commonly known as a workforce strike?
2. Are there any limitations on the right of state employees to strike, if such a right exists?
3. What is the effect of the provision titled "No Strike or Work Stoppage" found in Executive Order D 028 07 Section III. F. regarding the right of state employees to strike?
Answers: 1. Yes. State employees have a qualified, statutory right to strike.
2. Yes. A state employees' right to strike is conditioned on whether the Director of the Division of Labor chooses to exercise jurisdiction over the labor dispute.
3. The Executive Order may provide further limits on certain state employees' ability to strike, but cannot override the legislatively-created right to strike for all state employees. *Page 2 
 BACKGROUND
On November 2, 2007, Governor Ritter signed Executive Order D 028 07, titled "Authorizing Partnership Agreements with State Employees" (Executive Order). The Executive Order states that the purpose of the order is to "establish the framework for employee partnership agreements in service of a smarter, more effective, more efficient and more accountable state government for the citizens of this State." The Executive Order divides state employees into eight "Partnership Units" based upon pre-existing statutory occupational groups, and allows for a process whereby employee organizations, or unions, may petition to be certified by the Director of the Division of Labor (Director) as the exclusive representative of a Partnership Unit. That union then becomes a "Certified Employee Organization." The process involves a secret ballot election whereby either an employee organization group receives the majority of ballots cast, or state employees choose to decline representation for their Partnership Unit by any employee organization group.
If a Certified Employee Organization is selected to represent a Partnership Unit, the Executive Order requires that a "Partnership Agreement" be negotiated between Certified Employee Organizations, on behalf of a specific Partnership Unit, on a statewide basis (horizontal agreements). The Executive Order also requires that a Partnership Agreement be negotiated between each specific Partnership Unit and a single department (vertical agreement). The Executive Directors of departments are required to conduct such vertical partnership agreement negotiations with Certified Employee Organizations that represent a Partnership Unit.
The Executive Order states that, as elected officials, the Attorney General, Secretary of State, Treasurer, State Board of Education, and governing boards of institutions of higher education may choose whether or not to negotiate such vertical partnership agreements. Statewide horizontal agreements may still include specific Partnership Units from these exempted departments and higher education institutions.
The Executive Order limits Partnership Agreements from violating any statutory or constitutional requirements. The Executive Order allows for a disinterested third party to mediate any dispute over the terms and conditions of a Partnership Agreement in a non-binding manner. Finally, the Executive Order states that all Partnership Agreements shall contain an agreement not to strike, and provides that any Certified Employee Organization may be decertified by the Director if it engages in a disruptive measure that effectuates the same result as a strike.
 DISCUSSION I. State statute and relevant case law grant all public sectoremployees, which include state workers, a conditional right to strikesimilar to that of the private sector.[1] *Page 3 
At common law, public employee strikes were expressly prohibited.[2]
However, the Industrial Relations Act, C.R.S. § 8-1-101, et. seq
(Industrial Relations Act[3]), defines the State of Colorado, each county, city, town, irrigation and school district, and all public institutions and administrative boards of four or more employees as an employer, and defines an employee as a person in the service of an employer.[4] State labor statutes allow employees "to unite, combine, or agree in any [lawful] manner" with respect to employment matters.[5] This right applies to state employees.[6]
The Colorado Supreme Court held that these provisions apply to public employees. Thus, the Court held that the Industrial Relations Act implicitly vests all employees in the public sector with a conditional, legislatively-created right to strike, identical to the private sector.[7]
II. Under the Industrial Relations Act, a state employees' right tostrike is conditioned on whether the Director of the Division of Laborchooses to exercise jurisdiction over the labor dispute.
Labor disputes in the public sector are subject to the authority of the Director because public sector disputes are presumed to affect the public interest.[8] The Director has the statutory discretion to take jurisdiction over disputes with public employees.[9] If the Director chooses to exercise jurisdiction over the dispute, his authorities include: the Director may gather information from the parties; the Director should promote voluntary arbitration, mediation, or conciliation of the dispute; the Director may issue a final order resolving the dispute; the Director may terminate his jurisdiction without resolving the dispute; and the Director may order contempt charges for failure or refusal to comply with an order.[10]
During such time the Director chooses to exert jurisdiction, the relationship between employer and employee is preserved, the status quo is maintained, and a strike is not allowed.[11] The Industrial Relations Act also states that the Director shall proceed with reasonable diligence and shall render a final award or order terminating such jurisdiction without unnecessary delay.[12]
Therefore, state employees are able to strike if the Director terminates jurisdiction without issuing an order, or if jurisdiction is not exercised by the Director. C.R.S. section 8-1-126 provides that nothing in the Industrial Relations Act shall be construed to restrain any *Page 4 
employee from striking in any dispute over which the Director's jurisdiction is concluded.[13] For example, in Martin, when the Director terminated jurisdiction without the dispute's final resolution, teachers exercised their right as public employees to strike.[14]
III. The Executive Order may provide further limits on certain stateemployees' ability to strike but cannot override thelegislatively-created right to strike for all state employees grantedunder the Industrial Relief Act and relevant case law. A. The Executive Order may limit certain state employees' ability tostrike by requiring any Partnership Agreement negotiated under theExecutive Order to contain an agreement not to strike.
The Executive Order states in Section III. F., titled "No Strike or Work Stoppage":
 Partnership Agreements negotiated pursuant to this Executive Order shall contain an agreement not to strike.[15]
Given the decision in Martin, it is not certain that Colorado courts would give effect to an agreement where certain state employees contractually waive this statutory right to strike. Assuming that this provision is enforceable, it would mean that once a Partnership Agreement is agreed upon, the Certified Employee Organization and its dues paying members would be bound by their agreement not to strike. Should they breach that agreement by striking or by engaging in, or threatening to engage in, a behavior that effectuates the same result as a strike, presumably the state entity that agreed to the Partnership Agreement could terminate the agreement and likely pursue legal options for breach of contract.
However, these agreements not to strike may be applicable only to dues paying members of the Certified Employee Organization that have entered into the Partnership Agreement. The agreement to forego an individual's statutory right to strike may not be binding upon the following three classes of state employees: 1) state employees who are not dues paying members of the union selected as the Certified Employee Organization, 2) state employees who are members of a different union than the Certified Employee Organization, or 3) state employees exempted from the Executive Order and therefore not covered by any provision.[16] The Executive Order creates the new concept of a Partnership Unit which contains many state employees who are one step removed from being members of the union selected as the Certified Employee Organization. Therefore, it is unclear whether Colorado courts would conclude that *Page 5 
the Certified Employee Organization has the authority to bargain away these state employees' statutory right to strike.
This provision of the Executive Order also cannot apply where no Partnership Agreement is executed. This could occur in two different scenarios. First, for any number of reasons, a Partnership Agreement could not come to fruition between both a Certified Employee Organization and the Governor's designee (horizontal agreement), as well as a Certified Employee Organization and an Executive Director (vertical agreement). In fact, before a Partnership Agreement is initially finalized for a Partnership Unit, state employees maintain their conditional right to strike throughout the negotiation process, as well as after the duration of a Partnership Agreement might naturally expire. A second scenario could occur if, through the secret ballot process, a majority of state employee votes in a Partnership Unit choose no employee organization to represent the Partnership Unit. The Executive Order is silent on whether a Partnership Unit that selects no employee organization or union representation is still able to create a horizontal or vertical Partnership Agreement. Again, if no Partnership Agreement is finalized, then no state employees in that Partnership Unit have bargained away their conditional right to strike as contemplated in the Executive Order.
 B. While the Executive Order gives the Director the discretion to decertify any Certified Employee Organization which engages in a disruptive manner that effectuates the same result as a strike, decertification and sanctions likely cannot be exercised if the dispute is under the jurisdiction of the Director.
The Executive Order additionally states the following:
 Moreover, it shall be a violation of this Executive Order for any Certified Employee Organization to engage in or threaten to strike, work stoppage, work slowdown, sickout, or other similar disruptive measure against the State of Colorado or any of its agencies. In the event of a violation of this provision by a Certified Employee Organization, that organization may be decertified by the Director of the Division of Labor and shall not be entitled to payroll deductions of any membership dues.[17]
Because the Executive Order creates the ability of a Certified Employee Organization to exist, it most likely can remove their ability to exist. However, it should be noted that the Colorado Court of Appeals held that the relationship between a public employer and an employee organization selected by public employees as their representative is "essentially that of employer and employee."[18] Citing C.R.S. section8-1-125(1), the Court found that the Industrial Relations Act requires the preservation of the status quo of the employer-employee relationship until the Director has resolved the dispute or terminated his exercise of jurisdiction.[19] Although no court appears to have addressed the specific issue, a reasonable argument could be made that preservation of the employer-employee relationship would require no alteration of that relationship until the dispute has been resolved or jurisdiction under the Director has been *Page 6 
terminated. In that case, it may be improper for a Certified Employee Organization to be decertified or face sanctions from the Director for exercising, or threatening to exercise, the state employees' conditional right to strike while the dispute is under the jurisdiction of the Director.
C. The Colorado Supreme Court has stated that if, as a matter ofpublic policy, the General Assembly wants to provide certainty thatstate employees cannot strike and return to effect of the common lawrule, the General Assembly would need to amend the definitions ofemployer and employee in the Industrial Relations Act.
The Colorado Supreme Court in Martin stated that the General Assembly implicitly intended to provide public sector employees the right to strike:
 Again, we presume that the General Assembly was aware of the scope of the Industrial Relations Act. Had the General Assembly intended in 1943 or since to return public sector labor relations to the realm of the common law, it would have specifically amended the definitions of employer and employee in the Industrial Relations Act.[20]
Therefore, if the General Assembly and the Governor wish to return to the effect of the common law rule expressly prohibiting a state employees' conditional right to strike, the General Assembly and Governor should specifically amend the Industrial Relations Act definition of "employer" not to cover the State of Colorado, which would also remove state employees from the definition of "employee."
 CONCLUSION
For the reasons indicated above, I conclude that state employees currently have a qualified, legislatively-created right to strike. The Executive Order may place additional impediments on some state employees' ability to strike, but it does not eliminate state employees' conditional right to strike. Finally, I conclude that absent a specific statutory amendment to the Industrial Relations Act by the General Assembly, state employees will continue to maintain a qualified, statutory right to strike.
Issued this 29th day of November, 2007.
[1] Pursuant to the questions presented, this Formal Opinion will refer only to state employees. It should be noted that all public sector employees enjoy the same conditional right to strike as state employees.
[2] Martin v. Montezuma-Cortez Sch. Dist. RE-1, 841 P.2d 237, (citingAnchorage Educ. Ass'n v. Anchorage Sch. Dist., 648 P. 2d 993, 995-96
(Alaska 1982)).
[3] In 1915 the General Assembly passed the original Industrial Relations Act and amended it in 1921. The substance or the Industrial Relations Act and subsequent amendments are now codified in Article 1 of Title 8, C.R.S. (2007). This Formal Opinion shall refer to Article 1 Title 8 as the Industrial Relations Act.
[4] C.R.S. § 8-1-101(6)-(7)(a)(I)
[5] C.R.S. § 8-2-101
[6] C.R.S. §§ 8-1-101(6) and (7)(a)(I)
[7] Martin at 247, 251.
[8] Id. at 247.
[9] C.R.S. § 8-1-111
[10] C.R.S. §§ 8-1-103, 111, 114, 121, 123, and 130
[11] Denver Classroom Teachers Ass'n v. Sch. Dist. No. 1 in the Cityand County of Denver, 921 P.2d 70, 72 (Colo.App. 1996) (cert. denied) (citing C.R.S. § 8-1-125(1)).
[12] C.R.S. § 8-1-125(1), (4).
[13] Martin, 841 P.2d at 249 (citing C.R.S. § 8-1-126).
[14] Id. at 248-9.
[15] Executive Order D 028 07, Section III. F.
[16] The Executive Order covers any individual employed in the "personnel system of the state," as set forth in section 13 of article XII of the Colorado Constitution. The Executive Order specifically exempts the following employees from coverage: confidential employees; managerial employees; supervisory employees; Senior Executive Service employees; members of the Colorado National Guard; Director of the Division of Labor, the Governor's Designee and those employees working with the Director and Designee to implement the Executive Order; administrative law judges and attorneys who responsibilities include providing legal advice; student employees; individuals in the custody of the Department of Corrections or any law enforcement agency; patients or residents of a state institution; temporary employees employed for six months or less. Executive Order D 028 07, Section II. B.
[17] Executive Order D 028 07, Section III. F.
[18] Denver Classroom Teachers Ass'n, at 72.
[19] Id
[20] Martin, 841 P.2d at 252.